UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

COREY M. ADAMS
    Plaintiff
VS.
LOUISIANA DEPARTMENT OF CORRECTIONS, ~~MICAEL~~ MICHAEL HOWARD, CHAD DARBONNE, LUKE RHEAMS, JOHN ORR, MATTHEW GAMBLE, THOMAS STERLING, CHARLES GOODEN, GABRIEL HEBERT, ROGER YOUNG, JAMES ARNOLD, MICHAEL LOLLIS, JANE DOE, JEREMY MCKEY, JARVUS CALLAHAN, RANDY LAVESPERE, TRACEY FALGOUT, GAUTHIER,             GOODY, TOBY
    Defendants

CIVIL ACTION
NO.
JUDGE
~~MA~~ MAGISTRATE

BENCH/JUDGE TRIAL DEMANDED
COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF

## I. JURISDICTION

Plaintiff brings this lawsuit pursuant to 42 U.S.C. §1983; Americans with Disabilities Act (ADA) ~~42 tot~~ 42 U.S.C. §§ 12101 et. seq.; and 504 Rehabilitation Act. This court has jurisdiction under 28 U.S.C. §§ 1331 & 1343. Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201.

## II. VENUE

The district ~~court~~ of Louisiana is an appropriate venue under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to ~~this~~ the claims occurred in this district.

## III. PARTIES

A. Plaintiff Corey Adams was at all times relevant to this action a prisoner incarcerated at Louisiana ~~State~~ State Penitentiary (LSP), which is located in the district of Louisiana.

B. Defendant MICHAEL HOWARD at all relevant times was a captain at LSP employed by LDOC.

C. Defendant CHAD DARBONNE at all relevant times was an assistant warden at LSP employed by LDOC.

0. Defendant          GAUTHIER at all relevant times was a lieutenant colonel at LSP employed by LDOC.

1. Defendant          GOODY at all relevant times was a classification ~~official~~ official at LSP employed by LDOC.

2. Defendant LUKE RHEAMS at all relevant times was a colonel at LSP employed by LDOC.

3. Defendant JOHN ORR at all relevant times was a captain at LSP employed by LDOC.

4. Defendant MATTHEW GAMBLE at all relevant times was a psychiatrist at LSP employed by LSP and/or LDOC.

5. Defendant THOMAS STERLING at all relevant times was a captain at LSP employed by LDOC.

6. Defendant CHARLES GOODEN at all relevant times was a Lieutenant at LSP employed by LDOC.

7. Defendant GABRIEL ~~HERB~~ HEBERT at all relevant times was a major at LSP employed by LDOC.

8. Defendant TOBY at all relevant times was a sergeant at LSP employed by LDOC.

9. Defendant ROGER YOUNG ~~was~~ at all relevant times was a major at LSP employed by ~~LDOC~~ LDOC.

10. Defendant MICHAEL LOLLIS at all relevant times was a captain at LSP employed by LDOC.

11. Defendant JAMES ARNOLD at all relevant times was an assistant warden at LSP employed by LDOC.

12. Defendant JANE DOE at all relevant times was an EMT at LSP employed by LSP and/or LDOC.

13. Defendant JEREMY McKEY at all relevant times was an assistant warden at LSP employed by LDOC.

14. Defendant LOUISIANA DEPARTMENT OF CORRECTIONS at all relevant times was a public entity employed by the State of Louisiana.

15. Defendant JARVUS CALLAHAN at all relevant times was a major at LSP and employed by LDOC.

16. Defendant RANDY LAVESPERE at all relevant times was a medical director at LSP employed by LDOC.

17. Defendant TRACEY FALGOUT at all relevant times was an assistant warden at LSP employed by LDOC.

18. All defendants listed at all relevant times were acting under color of state law and are being sued in official capacities under the Americans with Disabilities Act and Section 504 Rehabilitation Act except for defendant Callahan, and all are being sued in their individual capacity under 42 U.S.C. § 1983.

### IV. EXHAUSTION OF ~~AVAIL~~ AVAILABLE REMEDIES

19. Plaintiff exhausted his administrative remedies before filing this complaint.

### V. FACTUAL STATEMENT

20. The conditions at CBD/CBL are extreme, harsh and unconstitutional. Those conditions are cruel and unusual punishment and involves the ~~unnecessary~~ unnecessary and wanton inflictions of pain - which clearly violates the United States Eighth Amendment Constitution, Federal statutory rights, state law, Department of Corrections Dept. Regulations, prison policies and directives. (See "FACTS and Exhibits - A, B and C of ARP Case Numbers: LSP-2020-2740 and ~~2020~~ LSP-2020-2748 as "evidence" to substantiate and support the above claim.)

Relief: Save and store all relevant documents, objects, items, video data and footage mentioned herein and connected to them for use in your investigation, courts, etc.

21. The above in paragraph~~s~~ number~~s~~ ~~20~~: ~~were FACTS written in plaintiff's Emergency A.R.P.~~ 20. were written in plaintiff's Emergency A.R.P./grievance - which was "Accepted" and processed.

22. The following paragraph numbers 23 through 190 are "FACTS and Exhibits-A, B and C of ARP case numbers: LSP-2020-2740 and LSP-2020-2748, as "evidence" to substantiate and support the above claim in paragraph above paragraph number:

23. On October 6, 2020, around 6 a.m Plaintiff and an orderly name Keith got into a loud heated argument.

24. The argument was so loud the officer that operates the security control booth at upper T.U, the tier sergeant (cadet magee), defendant Howard and everyone upstairs could hear.

25. A few hours later defendant Howard came to my assigned cell (T.U-upper A tier cell#2) placed Plaintiff in iron leg, arm, waist restraints to escort him to and from Disciplinary court (D.C).

26. Usually, tier sergeants and other lower ranking officials escorts prisoners to and from D.C.

27. On plaintiff's way to D.C Keith told Plaintiff he would attack him on his way back.

28. Defendant Howard did not act on this. He deliberately ignored it.

29. On our way back upstairs when Keith seen Plaintiff entered the lobby he walked up to him and attacked him with his balled fist.

30. Instead of defendant Howard activate his emergency beeper or stop the attack he stood and watched.

31. At some point defendant Howard, cadet magee intervened and defendant Howard tried to handcuff Keith.

32. Plaintiff was escorted to his assigned cell and Keith was braught downstairs.

33. When Plaintiff was put in the cell he repeatedly told defendant Howard that he were having severe rib pain from the attack and needed to see medical.

34. Defendant Howard told Plaintiff that he would be seen by medical then left.

35. However, defendant Howard did not contact medical.

36. About an hour later from the attack defendants Barbonne and Gauthier came on upper T.U.

37. When Plaintiff seen them he began hollaring to speak with them.

38. Defendants Darbonne, Gauthier, Howard and ~~sgt. may~~ cadet Magee came on upper A tier in front of cell #2.
39. Plaintiff told defendants Darbonne and Gauthier that he needed medical treatment for injuries suffered from the attack. (See Health Care Request Form "HCRF" no. 613183.)
40. Defendant Darbonne asked plaintiff when did the attack happen because no beeper was activated. He was not notified, plaintiff told him.
41. Defendant Darbonne asked cadet Magee about the attack, cadet Magee began to inform him.
42. Defendant Darbonne asked defendant Howard about the attack, defendant Howard began telling him.
43. Defendant Darbonne asked defendant Howard where was Keith now, defendant Howard answered, "down stairs!"
44. Defendant Darbonne asked defendant Howard what was Keith doing down stairs—why wasn't he locked up at CBD?
45. Defendant Howard nodded to defendant Darbonne (gesturing, as if to speak with defendant Darbonne in private—as if defendant Howard were trying to ~~hide~~ cover up the truth.
46. Defendants Darbonne and Howard walked away from cell #2 to the front tier gate to have private talk.
47. Plaintiff felt that defendant Howard were telling defendant Darbonne a fabricated story—so he and other prisoners on the tier told defendant Darbonne to review the upper lobby camera footage as proof of the attack.
48. Defendant Darbonne said that was what he was about to do, left and went inside of upper control booth with defendants Howard and Gauthier following behind.
49. Where cell two is there's a clear view inside of upper control booth— which plaintiff watched.
50. Plaintiff watched defendants Darbonne and Gauthier get on their personal cellphones—which they reviewed the attack from.
51. Defendant Darbonne left out of the booth, came to the head of upper A tier and told plaintiff to pack his things—he were being transferred (as punishment) to CBC.
52. Plaintiff told defendant Darbonne that the cellblock deplorable conditions are extreme, harsh and causes him to harm himself.
53. Plaintiff also told defendant that October 8, 2020 was his last day on disciplinary detention (isolation), two days from then.
54. Defendant Darbonne payed plaintiff no attention then left—which plaintiff cut his left wrist multiple times as a result of the retalitory transfer.
55. Plaintiff strongly believes that Defendant Darbonne transferred him from T.U (a mental health facility) 10-6-20 out of retaliation because plaintiff tried to sue his daughter in a civil action in this honorable court for violating his rights.
56. In prior ARPs, grievances, some dating back to 2019—plaintiff complained of and put defendants, LSP personnel on notice that living conditions at cellblocks D, B and C were extreme, harsh and unconstitutional and made plaintiff feel like and want to harm himself. (See LSP case numbers: 2021-0608; 2021-0519; 2020-1368; 2020-0969; 2020-1370; 2020-1676; 2020-1079; 2020-2569; 2020-2231; 2020-1097; 2020-2895; 2020-3175; 2020-3176; 2020-2954; 2020-2740; 2020-2748; ~~2020-2020~~ 2021-0608; and 2021-0642.) Relief was denied in each one by

defendant McKey and the conditions were/~~ongoing~~ are ongoing!

57. Plaintiff was then escorted to cellblock C (CBC) which he did not remain over ten minutes.

58. After seeing medical/EMT for the attack happened at T.U-which was logged as a "simple fight"-Plaintiff was escorted to ~~cell~~ cellblock D (CBD). (See HCRF no. 613183).

59. When Plaintiff got to CBD he was put in/assigned to Lower Left "L/L" cell # six and place on Homicidal/~~sui~~ Suicidal mental health watch ~~because~~ for ~~of~~ the cutting himself at T.U.

60. The orderly Keith~~xxx~~ was only given a job change. He was never written up for any disciplinary rule violation and remained on the East yard!

61. However, Plaintiff was forced to endure and subjected to the following treatment/ conditions at CBD/CBC as a result of the unfair/retalitory transfer October 6, 2020 transfer:

62. Since Plaintiff been at CBD/CBC - day and night he see people running pass his cell that others say they haven't seen

63. Prisoners at CBD/CBC don't have a way to send out confidential/legal mail because ~~xxx~~ classification official, defendant Goody, do not come on the tiers.

64. Officials on all shifts are doing/making 45 minutes or more suicide watch checks/walk throughs on L/L tier at CBD.

65. In the 2pm hour on 10-7-20 defendants Luke Rheams, John Orr, Sgt. Junno and Lt. Blackmoe came on CBD 4/L stopping by each cell.

66. Defendant Rheams was asked by prisoner (including Plaintiff) ~~when~~ when would they be issued mattresses because ~~they did~~ we did not have any. Review of 4/L ~~camera footage tier~~ tier camera footage will show that the Plaintiff was denied a mattress and had to sleep, lay and sit on a steel bed and concrete floor from 10-6-20 passed 10-12-20 as a result!

67. Review of 4/L ~~xx~~ tier camera footage will show that no tier walkers to watch suicide/homicide watches were assigned to 4/L tier from 7pm 10-6-20 to 5:30 a.m 10-7-20; 7pm 10-7-20 to 5:30am 10-8-20, 6pm 10-8-20 to 5:3am 10-9-20; etc., as required!

68. On 10-8-20 during 5:30 pm, atleast 6:45 pm, no official came on CBD 4L tier to check on suicide watches, when Health Care policy No. HC-38 requires that officials make 15 minute intervals/checks; and in between that time large amount of rain leaked from outside ~~xxx~~ unto CBD 4/L tier forming large puddles of water that went into cells 8-11.

69. All cellblock windows are painted and we are unable to see any daylight or outside unless the windows are opened - which cold/freezing weather prevents.

70. Suicide watches and other prisoners at CBD/CBC are not allowed or issued covid-19 masks for protection or adequate winter/clothing for cold temperatures.

71. At the main prison cellblocks there are no tier drainage pipes in case of floods, etc.

72. All tier, lobby, dorms, etc. cameras record.

73. Plaintiff was ~~xxx~~ now at risk for catching covid-19. At T.U there weren't any prisoners that tested positive.

74. Prisoners on security/mental health 4-point restraints (shackled and handcuffed to a steel ~~xxx~~ bed in a spread eagle position) are deliberately not being let up to eat meals, shower, use the bathroom every two hours as required by policy - at CBD.

75. On 10-10-20 night there were times no official came on L/L tier, CBD to ~~punch the time clock~~ check on ~~suic~~ suicide/homicide watches or punch the time clock in over a hour.

76. On 10-11-20 day and night shift officials did not come on 4L tier CBD to punch the time clock or check on suicide watches every 15 minutes, as required.

77. Prisoners at CBD/CBC are put in cells with any inmate, even those that have Covid-19 symptoms, no one is being tested at CBD/CBC.

78. In the 3pm hour a mentally ill prisoner in Lower Right ("L/R") shower at CBD was yelling (something he often does) and was sprayed with chemical agent as a result by defendants Thomas Sterling and Charles Gooden on 10-11-20.

79. On 10-11-20 in the 3pm or 4pm hour a prisoner in CBD 4L cell #7 was sprayed with chemical agent while in the cell with another prisoner by defendants Sterling and Orr present, watching.

80. The prisoner, Willie Ratcliff, who did not brake any rules told defendants Orr and Sterling that he was very sensitive to chemical agent prior to the use of chemical agent but was ignored. He suffered also as a result.

81. However, the prisoner sprayed, Jamario Kato #595850, was placed in iron hand and leg restraints then removed from cell #7 and escorted to 4L shower by both defendants.

82. When Kato was escorted into 4L shower defendant Sterling walked into the shower behind him and punched Kato in the face, twice - which defendant Orr failed to intervene.

83. Because Kato was upset about defendant Sterling hitting him and defendant Orr failure to intervene, after both defendants left he kicked then pulled on the shower door once.

84. The shower door slid open!

85. Kato exit the shower and fell in a large body of water that always comes out of the shower onto the tier.

86. On 10-12-20 morning Lt. Walker, defendants Rheams and Orr came on CBD 4L tier and made inmates that had on covid-19 masks take them off their faces and throw them out of their cells onto the tier. These prisoners were not on any mental health watch.

87. At this time there weren't any warden assigned over the main prison cellblocks. As a result, defendant Rheams and his subordinates were deliberately oppressing prisoners, abusing them and their authority.

88. Prisoners in CBD/CBC were on backlog for "months" before they were transferred (especially those sentenced to/on Extended lockdown) without any outdoor recreation!

89. Most times there are no HCRFs at CBD/CBC to make sickcall.

90. At CBD/CBC there are no radios, televisions, out of cell time, tier hours, etc. for months!

91. Inmates are deliberately double celled with others and/or inmates that are dangers to themselves and others at CBD/CBC (which is the reason why they were assigned, housed on Extended lockdown in a "one" man cell at T.U.), and the severe mentally ill (like plaintiff).

92. There are policies/directives at LSP which prohibits maximum custody and/or the mentally ill (especially "severe") and those that are a danger to themselves or others from being double celled.

93. Legal Aid inmate counsels do not go to CBD/CBC, prisoners are not allowed any other property, socks, etc. but legal work (which is limited) and a state issued jumpsuit.

94. The conditions at CBD/CBC makes plaintiff claustrophobic, want to die and depresses him to a point he does not want to take his mental health medications.

95. Since Plaintiff been transferred from his one man cell at T.U October 6, 2020 to CBD/CBC, etc. - he had stopped taking his psychotrophic medications because they make him drowsy, sleep much of the time. He needed to be alert and on guard because he was now in unsafe environments.

96. At CBD/CBC, etc. prisoners were/are being forced to double cell with other prisoners, without any precautionary measures being taken and/or by supervisory officials.

97. At CBD/CBC, etc. many prisoners that were double celled were attacked and/or dangerous weapons were found on them, in their cells or have been used to harm one another, as a result.

98. When plaintiff was finally issued a mattress 10-12-20 (when he was taken off of suicide watch 10-13-20 morning) his thin suicide mattress was taken- now, leaving him without a regular mattress for days!

99. There are policies/directives at LSP which prohibits prisoners that are not in restraints to be around those that are to prevent attacks.

100. On 10-13-20 plaintiff was forced to double cell with another prisoner at CBC L/R cell #2.

101. Immediately after plaintiff was forced into CBC L/R cell #2 voices were telling him that the prisoner in the cell with him was trying to harm him. As a result, Plaintiff broke a sharp piece of metal from the broken light fixture inside of the cell and repeatedly cut into his right wrist multiple times.

102. Most times there are no HCRFs at CBD/CBC to make sickcall.

103. Plaintiff have been diagnosed with chronic Post Traumatic psychosis, bipolar Disorder, major Depressive Disorder, paranoia, schizophrenia, and etc.

104. Officials at CBD/CBC are not wearing Covid-19 masks/face covering to protect prisoners from contracting the virus.

105. At CBD/CBC windows are kept open and the heating system off deliberately to freeze and discourage prisoners from being or going on Hunger strike and suicide/Homicide "watch"!

106. During sickcall contact with unknown EMT (female) on 10-14-20 in the 4am hour on CBD L/L cell #6 - plaintiff handed her a HCRF.

107. The HCRF complained inside: "something keeps telling me to cut and harm myself and others. Everybody trying to kill me. I never reported this because I didn't have a mattress for days on suicide watch and I been cold. It's the eighth day I been without a mattress - my body hurts."

108. However, plaintiff was not seen by a mental health official. On 10-18-20 morning plaintiff stopped EMT doing sickcall on CBD L/L tier in front of cell #6 and handed him HCRF, which states inside: "I haven't been double celled since 2015. I am maximum custody, a danger to myself and others, and a cutter. While at CBD and CBC I've been, am forced to double cell. Each time I'm double celled something keeps telling me that the person inside of the cell is trying to hurt or will attack me, to attack and get them first - and not take my mental health meds so I can be alert." (see HCRF no. 613250)

109. On or about 10-18-20 there was a emergency beeper activation on CBD L/L tier because the two prisoners in cell #14 had gotten into a fight inside the cell.

110. The prisoner that had been in cell #14 first was assigned and backlogged to Extended lockdown ("maximum" custody) and should not have been double celled.

111. The fight had happened 30 minutes before the beeper activation. The tier sergeant (Sgt) became aware of the fight 30 minutes later because Sgt.s are not making 15 minute suicide tier checks! (See Time clock cards and review CBD 4/L tier camera footage.)
112. In the 4pm hour of 10-20-20 plaintiff stopped EMT #586 for sickcall ~~at cell #6~~ by cell #6 at CBD and handed him a HCRF.
113. The HCRF no. 613178 had written inside: "Ever since I been at CBD and CBC I have been very depressed. Not a day goes by that I don't think of harming myself and others."
114. At this time plaintiff was not on suicide/~~watch~~ Homicide watch.
115. After reading plaintiff's complaint in HCRF no. 613178 the EMT told plaintiff he would notify mental health personnel.
116. As a result of ongoing major depression, in the 2pm hour plaintiff cut his right wrist multiple times.
117. Sgt. Anderson later came on 4/L tier at CBD to punch his time clock card.
118. Sgt. Anderson seen blood dripping from plaintiff's right wrist unto the tier as plaintiff's arms hung out of the tray slot, resting.
119. Instead of Sgt. Anderson activating his emergency beeper he continued walking up the tier to punch his time card.
120. On Sgt. Anderson's ~~way~~ way back down 4/L tier he told plaintiff he would get someone to come and see him, leaving off the tier.
121. Prisoners on 4/L tier began yelling for help and supervisory officials.
122. Shortly afterwards master sergeant (MSgt.) Augustine came on 4/L tier to cell #6 and told plaintiff he ~~had~~ some legal mail he needed to sign for.
123. However, after seeing plaintiff's bloodied ~~arms~~ arm and the mental condition he was in, and blood on the tier MSgt. Augustine left and defendant Gooden shortly came to cell #6.
124. Defendant Gooden told plaintiff to hand him the orange state issued jumpsuit he was wearing after seeing lacerations and blood on plaintiff's right arm and tier.
125. Defendant Gooden threw the jumpsuit across from cell #6, told plaintiff ~~~~ he'd call a social worker then left, (leaving plaintiff in cell #6 unattended, without searching plaintiff or cell #6).
126. Two mental health social workers (names unknown) later came to cell #6 and seemed surprised when they looked in ~~cell~~ the cell and seen plaintiff and the cell bloodied.
127. The social workers asked plaintiff a few questions but plaintiff could not respond.
128. One of the social workers said, "Okay, I'm gonna start you on 'standard watch'," then both left.
129. After some time, ~~female~~ female EMT (Jane Doe) came on 4/L tier, walked pass cell #6 to the end of 4/L tier and punched the time clock.
130. On Jane way back up 4/L tier she ~~stood~~ stopped in front of cell #6, briefly, looked at the bloodied cell and lacerations on plaintiff's right arm.
131. Jane told plaintiff have a nice day in a sarcastic ~~way~~ then left the unit without providing him any medical treatment for his injuries.
132. However, being left in the same regular cell, in the same mental health condition

in the 4pm hour Plaintiff cut ~~himself~~ his right arm, again, in a different area multiple times.
133. Being officials were not making 15 minute tier rounds to check on homicide/suicide prisoners - Sgt. Anderson, etc. did not observe the fresh injuries (lacerations), so plaintiff just bled.
134. However, because of ongoing depression, etc., in between 6pm and 7pm plaintiff attempted suicide by another cutting!
135. This time plaintiff cut the inside of his left wrist multiple times.
136. When prisoners in cell #5 and 7 observed fresh blood dripping from plaintiff's left arm onto the tier they yelled for defendant Toby.
137. Defendant Toby came in front of cell #6, seen the ~~cuts~~ cuts and fresh blood dripping from plaintiff's left wrist onto the tier ~~but~~ but did not activate his emergency beeper.
138. Instead, defendant Toby told plaintiff he would notify his supervisors (defendants Lollis and Young), then left off 4L tier.
139. As a result of ongoing major depression and not being seen by a mental health official, Plaintiff cut himself multiple times on the outter side of his wrist area.
140. Prisoners housed in 4L tier cells 5, 7 and others on the tier yelled for defendant Toby.
141. Defendant Toby came on 4L tier and stand in front of cell #6 observed plaintiff a couple of minutes, told him he would, again, notify his supervisors, then left off of 4L tier.
142. Later defendants Young, Toby, Lollis and Lt. Hilborne came on 4L tier to make usual tier ~~walks~~ walk through rounds.
143. Instead of defendants Young and Lollis go directly to cell #6 to see about Plaintiff, both stopped at cell #one for sometime arguing with the prisoner in cell #one about a towel.
144. However, when the three officers got in front of cell #6, seen blood in front of and inside of cell #6, Plaintiff was told that medical would come and see him then left.
145. neither official searched Plaintiff or his cell or tried to find out what Plaintiff had been cutting himself with.
146. Plaintiff was later seen by EMT Strother.
147. On 10-20-20 a prisoner name Jonathan Robertson was transferred from CBC to CBD 4L tier cell #3, because he was about to attack multiple officials.
148. Robertson had been double celled at ~~CBC~~ CBC since July 2020, ~~had~~ and his 30 day disciplinary ~~sentence~~ Detention sentence had been long overdue. This frustrated him!
149. As a result of Robertson's intent to fight multiple officials "alone", he was ~~to~~ placed on "~~homicide~~" (or should have been placed on) "homicide" watch, at CBD 4L cell #3 - with another prisoner who was on "suicide" watch!
150. Upon information and belief there is policy restricting prisoners from being double celled ~~certainly~~ while on suicide (certaintly, homicide) watch.
151. However, in the 11pm hour of 10-20-20 Plaintiff heard a prisoner scream for help. I could hear someone being attacked.
152. The attack, screams and outloud cries for help went on for at least 15 minutes continuously.
153. After being notified by a prisoner, defendant Toby walked on 4L tier, got in front of cell #3, looked inside then activated his emergency beeper.

154. As a result of the beeper activation defendants Young, Lollis and LT. Hilborne shortly arrived to CBD 4L tier cell #3.
155. After standing outside of cell #3 watching for at least 5 minutes-
156. Robertson was placed in restraints and removed from cell #3.
157. The prisoner attacked was later removed from cell #3 after seen by EMTs and escorted to the ATU for emergency medical treatment for serious injuries sustained from the attack.
158. The prisoner that was in cell #3 that Robertson attacked was injured so badly he never returned to CBD!
159. In between 10-12-20 and 10-16-20 defendant Arnold along with defendants Rheams, Orr, Gooden and Sterling walked by each cell on CBD 4L tier looked inside before leaving off.
160. Each defendant seen, were aware of the unsafe, extremely harsh, unsafe and unconstitutional conditions at CBD/CBC, that most suicide/homicide watch, maximum and protective custody prisoners were "double celled"!
161. upon information and belief there are policy/directives at LSP/DOC which prohibits prisoners that are on suicide/homicide watch, maximum or protective custody and Hunger strikes from being double celled.
162. on 10-21-20 in the 1pm hour defendants Arnold, Rheams, etc. came on CBD 4L tier and prisoners on the tier yelled requesting to speak with defendant Arnold about important matters.
163. Defendant Arnold walked off 4L tier, ignoring them.
164. on 10-26-20 morning a prisoner in CBD 4L tier cell #7 who often talks to himself, makes very loud noises was sprayed with excessive amount of chemical agent by defendant Orr.
165. At first defendant Orr used a short thick black and red can of chemical agent, then had another official bring him the large yellow and black can which is used for "riots"!
166. Defendant Orr sprayed a long, short, then long burst into cell #7 after being warned that there were prisoners on 4L tier that were on Hunger strike, were epileptic epileptic (like plaintiff), had asthma, etc. (Review security body camera used and tier camera footage.)
167. The prisoner in cell #7 then kept flooding his cell using toilet water to decontaminate- which seeped through the cracked wall into cell #6 (plaintiff's assigned cell).
168. As a result of ongoing depression, anxiety, hallucinations, being forced to no mental health treatment, in the 3pm or 4pm hour of approx. 10-26-20 plaintiff cut himself multiple times.
169. As a result of ongoing depression combined with anxiety, hallucination, fear of being double celled, the extreme, harsh, cruel and unusual punishment at CBD/CBC- plaintiff cut himself multiple times while in cell #6 4L tier CBD.
170. LT. Blackmoe reported the incident over her emergency radio/beeper while standing against the window across from cell #5.
171. Shortly defendant Orr came on 4L tier in front of cell #6, looked at the lacerations and blood on plaintiff's right arm.
172. Defendant Orr asked LT. Blackmoe with sarcasm "You called me for this?"
173. LT. Blackmoe answered, "Yeah, he cut himself, He's bleeding. I'm just doing my job."
174. Defendant Orr told LT. Blackmoe, "the next time Corey cut himself don't pay it any mind!" then left.
175. on 10-26-20 night a prisoner I think first name Clarence, assigned to CBD 4L tier

175. cell #8 was being escorted to 4L shower by Sgt. Kato.
176. Clarence walked pass the shower and attacked Sgt. McClaine Kyle McClain- who had the tier 4L tier gate wide open.
177. In the 2pm hour of 10-18-20 plaintiff became very depressed.
178. Plaintiff climbed onto the top bed in cell #6 at CBD 4L tier and cut his left wrist multiple times on a pointed, sharp tip of a large screw that stuck out of the ceilings concrete.
179. The prisoner in cell #7 next to plaintiff yelled for Sgt. Byrd when he saw plaintiff's bloodied arm resting on the tray slot.
180. An emergency beeper was activated as a result and defendant Orr and LT. Williams came to cell #6.
181. LT. Williams placed plaintiff in restraints and escorted him to 4L tier shower.
182. While standing in the shower Sgt. Harrell stood at the entrance gate and said, "he's not stupid, he know how to cut. He not trying to kill himself." As the EMT tended to plaintiff's injuries.
183. Plaintiff became upset and begged Sgt. Harrell to please leave him alone, he was not feeling well.
184. Sgt. Harrell said in response, "you need to kill yourself. Slit your throat."
185. Plaintiff told Sgt. Harrell that he were making him want to cut himself again. If you keep messing with me I will tell the EMT what you told me yesterday when you passed in front my cell ("to suck your dick").
186. Sgt. Harrell became upset and told plaintiff if he reported it he would write him up and say that plaintiff lied, for cutting himself and food poison him.
187. At no time did Sgt. defendants McKey, Goody, Gamble, the defendants mentioned herein, etc. remove plaintiff from the extremely harsh, unsafe, unconstitutional conditions at CBD/CBC!
188. Upon information and belief defendant Gamble has the the authority to transfer prisoners to and from The Transitional Mental Health Unit (T.U).
189. CBD/CBC and T.U tier/lobby cameras footage and/or security body recorded camera footage mentioned herein will prove the above facts.
190. All defendants mentioned herein lacked penological and/or security justification to treat plaintiff in the manner as described herein.
191. All defendants mentioned herein acted wantonly, maliciously, willfully and deliberately. From plaintiff remained at CBD/CBC from 10-6-20 to 12-29-20!
192. On August 25, 2021 at approximately at 11pm-defendant Orr alleged the following in his disciplinary report filed against plaintiff; "On the above date and approximate time, while making routine rounds, I, Captain John Orr, while making routine rounds, I observed offender Corey Adams, 357624, cell #1, with two sheets tied around his cell bars, obstructing the view into his cell. I then ordered offender Adams to remove the sheets and offender Adams stated "Fuck you Capt. Orr." I then removed the sheets and at that time offender Adams spit in my face, striking me in my face, offender Adams then put the sheets back up. I then activated my body camera #1008 and gave offender Adams several more direct verbal orders to remove the sheets and offender Adams refused all orders given and at that time I administered the minimal amount of chemical agent in order to gain control of the situation. It was then that offender Adams removed the sheets from his cell bars. Offender Adams was then restrained, his cell was shook down and no contraband was found.
192. Because plaintiff was not given a copy of defendant Orr's disciplinary report when plaintiff was brought before the disciplinary board hearing before major Jackson, inmate counsel Ricky Bennett requested

by motion that the matter be deferred 24 hours for a copy of the report and to prepare a defense, with a plea of "not guilty".

193. On 9-1-21 plaintiff was brought before defendant Callahan and a female classification official as Disciplinary Board members for the hearing of defendant Orr's Aug. 25, 2021 disciplinary report.

194. Plaintiff was again represented by inmate counsel Bennett.

195. After defendant Callahan read defendant Orr's disciplinary report into the record and asked plaintiff how did he plea to the reports contents - plaintiff said not guilty with the following statement in paragraph 196-207.

196. "I Captain Orr's report he alleges I spit on him - where's the proof, saliva?

197. Review of U/F upper "F" (U/F) tier camera footage will show that "one", not two sheets were tied around my cell door 8-25-21 and it was not obstructing the view into cell #one.

198. Now, I had the sheet tied around the cell bars the entire shift because I was scared that Sgt. Turner would open my cell door to let Capt. Orr inside to murder me with the knife he removed from his pants pocket to cut a thin string I had running across the cell door @ that I always was allowed to hang a sheet over to keep the tier light from entering the cell.

199. I did not trust Capt. Orr and wanted to keep him from entering the cell in case I fell asleep. And review of the body camera will show that right after Capt. Orr cut the string he left from in front of my cell, came back and sprayed me with chemical agent, after the sheet was no longer up.

200. However, when Capt. Orr came first came on the tier at 5:30 shift change I had drafted an emergency ARP. After doing so I began kicking the cell bars trying to get Major Dawson to come to my cell because Sgt.s Turner, White or Capt. Orr would not phone him from the control booth and I feared Capt. Orr might retaliate against me somehow because he had been very upset with me for suffering PTSD, being in a frenzy and complaining outloud about he and Sgt. Turner deliberately ignoring T. Charle's loud cries for help from severe chest pain - and letting him die, as a result.

201. But Major Dawson did not come until it was too late.

202. Soon as he got to my cell I still tried to give him a copy of the Emergency ARP, Major Dawson read it then handed it back. He repeatedly refused to accept it and follow the language inside concerning Emergency ARPs.

203. This made me think and feel like I were set up and Capt. Orr being assigned to U/F tier was premeditated! Especially, when Major Dawson took property I had inside a green laundry bag from my cell, while locked in the shower at 12am, brought @ it inside the control booth unattended with Sgt. Turner and Capt. Orr until 5:12 am.

204. However, Major Dawson eventually took the Emergency ARP then left. But he did not take any corrective action, leaving Capt. Orr assigned to U/F tier, nor did he process, file or do a UOR, as required! He did not turn it in.

205. So, the following morning I wrote out a copy and gave it to Major Jackson.

206. Major Jackson followed Emergency ARP procedures.

207. Now, I would like to read the Emergency ARP into the record and have it introduced as evidence and put on file as "Exhibit one", afterwards.

208. U/F tier and upper lobby camera review/can and will prove the above."

209. Plaintiff was stopped by defendant Callahan somewhere's during his statement. Defendant Callahan also refused to allow plaintiff to read, file the above mentioned Emergency ARP into the record, denying plaintiff his right to present a defense!

210. However, the Emergency ARP, given to defendant Dawson and Major Jackson read as follows in paragraphs 211-222.

211. Department Regulation No. B-05-005, chapter 4(1) states: "If an offender feels he is subjected to emergency conditions, he must send an emergency request to the shift supervisor. The shift supervisor shall immediately review the request to determine the appropriate corrective action to be taken. All emergency requests shall be documented on an unusual occurrence Report (Form C-05-001-W-1) by the appropriate staff member.

212. **FACTS**

213. Since T. Charles murder Aug. 2021 (actually 7-30-2021) 2021, I have been suffering PTSD, Major Depression, paranoia and anxiety.

214. On 8-24-21 I had to see sickcall because of ongoing psychological/emotional injury, as a result of T. Charles murder.

215. In Health care Request Form (HCRF) No. 613193 it states: "I need counseling. Ever since Sgt. Turner and Capt. Orr deliberately ignored T. Charles complaints of severe chest pains 7-30-21 and let him die in cell 3 (TU-U/F) - I have reoccurring thoughts and flashbacks of each doing me the same. This keeps me from sleeping when they work upstairs, TU!"

216. On 8-25-21 at 5:41 pm Capt. Orr came on U/F with EMT Mrs. Lauren. I felt very paranoid, fearful and discouraged. Shocked with disbelief, I could not believe that Sgt. Turner were assigned to work upstairs TU (even moreso, Capt. Orr working the same tier with me only) when the EMT Mrs. Lauren #584 came in front cell one Corey reported all of the above to her. Corey handed her his pink copy of HCRF No. No. 613193 to read. Then I made a medical emergency about not feeling safe or comfortable with Capt. Orr working this tier or he and Sgt. Turner upstairs (see HCRF No. 791282.)

217. Since T. Charles murder I have been making very loud complaints about not feeling safe when Sgt. Turner or Capt. Orr is around, have access to me, my personal property, mail, etc.

218. Around 7:35 pm 8-25-21, Capt. Orr stopped in front of U/F cell #one and told me "him and Sgt. Turner are going to kill me. I'm next!" Around 8:41 pm Capt. Orr stopped and pulled on the sheet Corey had tied into the bars, so Sgt. Turner or Capt. Orr could not open his cell, and told me, "you're next. Major Dawson and Lt. Col. Bellamy gonna let us kill you!" Around 10:35 pm Capt. Orr came on U/F tier and threatened to spray me with chemical agent without provocation.

219. As he held his body camera up, I told him, "If you spray me I would cut myself." He yelled, "I don't give a fuck!" "Suck my dick!"

220. note: A copy of this Emergency ARP, I handed to Major Dawson when he came on U/F tier at 11:08 pm, 8-25-21.

221. Relief:

222. 1. Immediately replace Capt. Orr with someone else;
    2. Stop putting/allowing Sgt. Turner and Capt. Orr upstairs around me; and
    3. Damages, injunctive relief for any injuries suffered in connection to this ARP.

223. Plaintiff appealed the Disciplinary hearing decision of defendant Callahan finding of guilty.

224. Plaintiff appeal was denied on 9-15-21 (Appeal No. LSP-2021-0246).

225. All defendants mentioned herein were put on notice that they were violating Plaintiff's United States Constitutional rights by their LDOC Employee manuals.

226. LDOC Employee manual clearly cites the United States constitution constitutional Amendments, ADA and Federal statutory laws.

227. However, defendant McKey at all relevant times was in charge of ~~decide~~ deciding administrative ARP grievances by prisoners at the first step.
228. All defendants herein have duties in protecting/ensuring all prisoners at LSP health and safety.
229. LDOC is a public entity, covered by title II of the Americans with Disabilities Act.
230. Defendant LDOC decides all prisoners ARP/grievances, administrative appeals and failed to make reasonable accommodations for Plaintiff's ~~documented ADA~~ mental disabilities.
231. Under the Americans with Disabilities and Section 504 Rehabilitation Acts Plaintiff is a qualified individual. All defendants are sued in their "official" capacities under the ADA and Section 504 Rehabilitation Act statutes and their "individual" capacities under 42 U.S.C. § 1983.

## Claims For Relief

### A. Violations of the Eighth Amendment (cruel and unusual punishment)

232. By their policies, and practices described herein, Defendants deprive Plaintiff of his constitutional right to be free from cruel and unusual punishment, protected by the Eighth Amendment to the constitution.
233. The practices outlined above subject Plaintiff to substantial risks of serious harm and injury.
234. Housing Plaintiff in these conditions does not serve any legitimate penological need.
235. Defendants deprive Plaintiff of basic human needs and violate present day concepts of human dignity.

### B. Violations of the Americans with Disabilities Act

236. Plaintiff have disabilities due to a Traumatic Brain Injury and severe mental illnesses, which interfere with his major life activities.
237. Plaintiff needs qualify him to receive mental health care, including therapy and counseling.
238. Plaintiff reallege and incorporate all allegations above herein.
239. The defendants knowingly and consistently discriminate against prisoners with mental disabilities by failing to provide them with reasonable accommodation for their disabilities and punishing them for behavior that is a product of their disabilities.
240. Defendants have further knowingly discriminated against persons with disabilities as the result of Defendants' methods of administration of ~~their administ~~ administrative/disciplinary segregation, ~~extended lockdown~~ solitary confinement, extended lockdown, and mental health programming.
241. By placing Plaintiff (prisoners) with mental illness in administrative/disciplinary segregation, extended lockdown, Defendants have denied Plaintiff with mental illness the benefits of the facility's services, programs, and activities, including education, programming, recreation, exercise, and mental health treatment and services, thus discriminating against Plaintiff (persons) on the basis of their disability.
242. Discrimination against prisoners with mental illness occurs particularly because prisoners do not receive mental health services sufficient to counteract the effects that administrative/disciplinary segregation, extended lockdown and other forms of punishment ~~have~~ have on ~~prisoners who are not~~ mentally ill prisoners, which is more severe than the impact it has on prisoners who are not mentally ill.
243. The Defendants discriminate against prisoners with serious mental illness on the ~~basis~~ basis of their disabilities. The defendants routinely warehouse prisoners with serious mental illness in administrative/disciplinary segregation, extended lockdown and especially solitary confinement.

244. By placing plaintiff (prisoners) with serious mental illness in administrative/Disciplinary segregation, extended lockdown and imposing behavior management plans and other forms of punishment, the defendants (a) fail to furnish reasonable accommodations to plaintiff (prisoners) with disabilities, (b) punish plaintiff (prisoners) with serious mental illnesses for disability-related conduct; and (c) deprive plaintiff (prisoners) with mental illness of access to adequate mental health care.

C. Violation of Section 504 of the Rehabilitation Act of 1973

245. Plaintiff reallege and incorporate all allegations above herein.

246. Plaintiff qualify as an individual with disabilities as defined in Section 504 of the Rehabilitation Act of 1973. He have physical and mental impairments that substantially limit one or more major life activity, including but not limited to thinking, concentrating, interacting with others, and controlling his behavior. He have records of having such impairment or are regarded as having such an impairment.

247. The Defendants discriminate against plaintiff (prisoners) with disabilities by failing to provide reasonable accommodation for his disabilities.

248. Defendants discriminate against plaintiff (prisoners) with disabilities solely on the basis of his disabilities in violation of Section 504.

249. In placing plaintiff (prisoners) with serious mental illness in administrative/Disciplinary segregation, extended lockdown the defendants have deprived plaintiff with serious mental illness from the benefits of the facility's services, programs, and activities, including education, programming, recreation, exercise, and mental health services, thus discriminating against him (them) on the basis of his disabilities.

D. Violation of the Fourteenth Amendment (Due Process)

250. The actions of Defendant Callahan in finding plaintiff guilty of Defiance and Aggravated disobedience with no evidence to support the charge, providing an adequate written disposition of the charges, and denial to introduce evidence, denied the plaintiff due process of law in violation of the Fourteenth Amendment to the united states constitution.

Prayer For Relief

251. Plaintiff request this court grant him the following relief:

A. Adjudge and declare that the acts, omissions, policies, and practices of Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise described herein have violated the rights of plaintiff under the Eighth Amendment's prohibition on cruel and unusual punishment, due process and those rights protected by the Americans with Disabilities Act and the Rehabilitation Act.

B. Enter injunctive relief enjoining Defendants and their agents from subjecting plaintiff to the illegal and unconstitutional conditions, acts, omissions, policies and practices set forth above;

C. Award plaintiff the cost of this suit, and reasonable attorneys' fee and litigation expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

D. Retain jurisdiction of this case until all Defendants have fully complied with the orders of this court, and there is reasonable assurance that the defendants will continue to comply in the future absent continuing jurisdiction;

E. Award compensatory damages against each defendant and jointly for physical, psychological and emotional injuries sustained herein at $1,000,000;

F. Award punitive damages against each defendant and jointly at $100,000;

G. Award compensatory damages under the ~~Americans~~ Americans with Disabilities Act, section 504 Rehabilitation Act Statutes;

H. Grant other just and equitable relief that this deems necessary.

_____
date

Respectfully Submitted,
By: _____
Corey M. Adams
#357624
Louisiana State Penitentiary
Angola, LA 70712

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the United States of America that the foregoing is true and correct. Executed on _____.
month, day, year

_____
Corey M. Adams