## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**COREY MARQUEE ADAMS (#357624)**                          **CIVIL ACTION**

**VERSUS**
                                                                                              **22-20-SDD-RLB**
**LOUISIANA DEPARTMENT OF CORRECTIONS, ET AL.**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 6, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

COREY MARQUEE ADAMS (#357624)                              CIVIL ACTION

VERSUS
                                                            22-20-SDD-RLB
LOUISIANA DEPARTMENT OF CORRECTIONS, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the Motion to Dismiss filed on behalf of defendants Louisiana Department of Public Safety and Corrections, Michael Howard, Chad Darbonne, Luke Rheams, John Orr, Matthew Gamble, Thomas Sterling, Roger Young, Jeremy McKey, James Arnold, Michael Lollis, Gabriel Hebert, Randy Lavespere, and Tracey Falgout (R. Doc. 19). The Motion is opposed. *See* R. Doc. 22.

The *pro se* Plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), filed this proceeding pursuant to 42 U.S.C. § 1983, the Americans With Disabilities Act, 42 U.S.C. 12101, *et seq.* ("ADA" ), and Section 504 of the Rehabilitation Act, 29 U.S.C. 794 ("RA" ) against numerous Defendants,[1] complaining that his constitutional rights were violated due to unconstitutional conditions of confinement, deliberate indifference to his health and safety, use of excessive force, and denial of a fair disciplinary hearing.[2] He seeks monetary, declaratory, and injunctive relief.

---

[1] Named as defendants are Louisiana Department of Corrections, Michael Howard, Chad Darbonne, Willard Gauthier, Blater Gooden, Luke Rheams, John Orr, Matthew Gamble, Thomas Sterling, Charles Gooden, Gabriel Hebert, Toby, Roger Young, Michael Lollis, James Arnold, Jane Doe, Jeremy McKey, Jarvus Callahan, Randy Lavespere, and Tracey Falgout. Defendant Jane Doe has not been served. In that regard, pursuant to the requirements of Rule 4(m) of the Federal Rules of Civil Procedure, failure to serve a defendant within 90 days of commencement of an action is cause for dismissal of that defendant from the proceeding. Accordingly, defendant Jane Doe should be dismissed pursuant to Rule 4(m).

[2] The Magistrate Judge has recommended dismissal of the plaintiff's disciplinary hearing claims asserted against defendant Jarvus Callahan. *See* R. Doc. 23.

Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's § 1983 claims against them in their official capacities. The plaintiff states in his Complaint that all defendants are sued in their individual capacities under § 1983. Nevertheless, to the extent the plaintiff may be asserting a § 1983 claim for monetary damages against defendants in their official capacities, § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, to the extent the plaintiff may be asserting a § 1983 claim against defendants their official capacities for monetary damages, any such claims are subject to dismissal.

Additionally, pursuant to 42 U.S.C. § 1983, only a "person" may be sued for the violation of an inmate's constitutional rights. Defendant Louisiana Department of Public Safety and Corrections is not a person within the meaning of § 1983. *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011). The Department is also entitled to sovereign immunity with regards to the plaintiff's § 1983 claims. "[T]he Fifth Circuit has squarely held that the Louisiana Department of Public Safety and Corrections is an arm of the State that is entitled to Eleventh Amendment immunity." *Beyard v. Caddo Parish Com'n*, 2007 WL 1741970, at * 2 (W.D. La. April 27, 2007) (*citing Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999)).

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286

(1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

**Plaintiff's Allegations**

In his Complaint, Plaintiff alleges the following: On October 6, 2020, the plaintiff and an orderly were involved in a loud "heated" argument. The argument was so loud that defendant Howard and others could hear. A few hours later, defendant Howard came to the plaintiff's cell and put him in restraints. As the plaintiff was being escorted to Disciplinary Court, the orderly told the plaintiff that he would attack him when he returned. Defendant Howard took no action. When the plaintiff returned, the orderly began punching the plaintiff. Defendant Howard stood by and watched without activating his beeper. At some point defendant Howard and Cadet McGee intervened.

The plaintiff was placed in his assigned cell and repeatedly told defendant Howard that he was having severe pain in his ribs. The plaintiff requested a medical evaluation. Defendant Howard told the plaintiff he would be seen by medical then left. Defendant Howard did not contact medical. Approximately one hour later, defendants Darbonne and Gauthier were on the tier and the plaintiff began yelling his requests to speak with them. Defendants Darbonne, Gauthier, Howard and Cadet McGee arrived in front of the plaintiff's cell, and the plaintiff stated that he needed medical treatment due to the attack. Defendant Darbonne asked when the attack occurred since there was no beeper activation and questioned where the orderly was now located. Defendant Darbonne and Defendant Howard then left to speak in private. After defendant Darbonne reviewed the camera footage, he returned to the plaintiff's cell and ordered him to pack his things for transfer to CBC.

The plaintiff told defendant Darbonne that the conditions of CBC were deplorable, extreme, and harsh which would result in the plaintiff engaging in self-harm. Defendant Darbonne left without responding. The plaintiff then cut his left wrist multiple times due to the impending retaliatory transfer. Plaintiff believes that the transfer was retaliatory because the plaintiff had previously filed suit against defendant Darbonne's daughter.

The plaintiff was transferred to CBC. He was then seen by medical and transferred to CBD. He was placed on suicide watch due to his earlier acts of self-harm. The orderly was given a job change, and never received a disciplinary write up for the fight.

On October 7, 2020, defendants Rheams and Orr, along with Sgt. Junno and Lt. Blackmore, came to the CBD and stopped by each cell. Plaintiff and other inmates asked defendant Rheams when they would be issued mattresses. The plaintiff was without a mattress from October 6, 2020, to October 12, 2020. Suicide watch checks were not completed every 15 minutes as required. Rain leaked into the cells, and the windows were obscured. Adequate clothing was not provided for the cold temperatures. While in 4-point restraints, the plaintiff was not allowed to eat, shower, or use the bathroom as required. Defendant Rheams and his subordinates deliberately oppressed and abused the prisoners in the CBD. The various conditions of the CBD make the plaintiff feel claustrophobic, which causes him to become depressed. The plaintiff stopped taking his psychotropic medications after being transferred because they cause him to feel drowsy, and since the plaintiff was no longer in a one-man cell he needed to be alert for his safety. Voices told the plaintiff that the person he was housed with was trying to harm him. The plaintiff broke a sharp piece of metal off a broken light fixture and used it to cut his right wrist multiple times.

On October 26, 2020, the plaintiff cut himself multiple times due to ongoing depression, anxiety, hallucinations, and lack of mental healthcare. The incident was reported by Lt. Blackmore and when defendant Orr arrived at the plaintiff's cell he asked, "You called me for this?" Lt. Blackmore responded the plaintiff has cut himself and was bleeding, and that he was doing his job. Defendant Orr told Lt. Blackmore, "The next time Corey cut himself don't pay it any mind." Defendant Orr then left.

The plaintiff cut himself again later the same day. At no time did defendants Mckey, B. Gooden, or Gamble recommended that the plaintiff be removed from the harsh, unsafe, and unconstitutional conditions in the CBD/CBC.

On August 25, 2021, defendant Orr issued a disciplinary report stating that the plaintiff failed to obey orders to take down two sheets that had been tied around the cell bars, verbally abused him, and spit on him. The plaintiff did not remove the sheets until a chemical agent was administered. The plaintiff was not given a copy of the disciplinary report.

The plaintiff had always been previously allowed to tie a sheet around the cell bars to block the tier light, while not obstructing the view into his cell. Captain Orr initially approached the plaintiff's cell and cut a string with a knife. He then left and returned with a can of chemical agent. Defendant Orr sprayed the plaintiff with the chemical agent after the sheet had already been removed.

**Qualified Immunity**

In response to the plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated

in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that Defendants' motion should be granted, in part. Plaintiff's allegations, accepted as true, fail to state a claim for monetary damages asserted against the defendants in their official capacities, retaliation, unconstitutional conditions of confinement, denial of access to the courts, failure to respond to his grievances and/or informal complaints, certain aspects of his deliberate indifference claims, against defendants Louisiana Department of Public Safety and Corrections, Sterling, Hebert, Arnold, Lavespere, Falgout, and Rheams in any regard, and relief sought on behalf of other inmates. Additionally, the plaintiff fails to state a claim under the ADA/RA against the individual defendants in their individual and official capacities.

## 42 U.S.C. § 1983

## Failure to Protect

Under the Eighth Amendment to the United States Constitution, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986); *Jones v. Diamond*, 636 F.2d 1364, 1373 (5th Cir. 1981). Specifically, prison officials "have a duty ... to protect prisoners from

violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an element of "subjective recklessness" as used in the criminal law. *Id.* at 837. A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Id. at 847*. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id.* at 837.

In the instant matter, the plaintiff alleges that, within the hearing of defendant Howard, he was involved in a heated argument with an orderly. Later, while being escorted by defendant Howard the orderly threatened to attack the plaintiff upon his return. When the plaintiff returned, he was attacked by the orderly, and defendant Howard delayed activating his beeper for assistance. Accepting the plaintiff's allegations as true, the plaintiff has stated a claim against defendant Howard for failure to protect him from harm at the hands of another inmate. As alleged by the plaintiff, defendant Howard was aware of the risk of an attack by the orderly, disregarded the risk, and took no action to abate it.

**Retaliation**

It is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that

occurs within a penal institution. *Woods v. Smith, supra*, 60 F.3d at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell, supra*, 449 F.3d at 684. *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). An inmate must allege more than his mere personal belief that he is the victim of retaliation, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.
> *Woods v. Smith, supra*, 60 F.3d. at 1166.

The plaintiff alleges that, following the attack by the orderly, defendant Darbonne transferred the plaintiff to the CBC/CBD, where the conditions were deplorable, in retaliation for the plaintiff's prior suit against defendant Darbonne's daughter. The plaintiff has not alleged any facts pertaining to direct evidence of motivation, nor has the plaintiff alleged a chronology of events from which retaliation may plausibly be inferred. Additionally, the plaintiff has failed to allege that his transfer was more than a de minimis adverse act. The plaintiff does not allege that he was transferred to a more dangerous or restrictive part of the prison[3]. As such, the plaintiff has

---

[3] While the plaintiff alleges that the conditions in the CBC were deplorable, none of the conditions alleged are an unconstitutional condition of confinement as discussed below.

failed to state a claim for retaliation against defendant Darbonne. *See Escobarrivera v. Whitaker,* 2022 WL 17352178 (5th Cir. 2022) (affirming dismissal of retaliation claim in the absence of facts supporting actual retaliation).

## Conditions of Confinement

The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). However, a constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas,* 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter, supra,* 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995).

### *Mattress*

The plaintiff alleges that he was without a mattress from October 6, 2020, to October 12, 2020. Plaintiff did not face a substantial risk of serious harm from the temporary lack of a mattress for six days.[4] *See Davis v. Gusman*, 2010 WL 1727825 (E.D. La. 2010); *Magee v. Crowe*, 210 WL 630011 (E.D. La. 2010); *Desroche v. Strain*, 507 F.Supp.2d 571, 580-81 (E.D.

---

[4] Plaintiff also contradictorily asserts that on October 12, 2020 he was "finally issued a mattress" but on that same date "his suicide mattress was taken." (R. Doc. 1-1 at ¶ 98).

La. 2007) "The conditions described by plaintiff, while plainly nor comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation." *Green v. Gusman*, 15-1738, 2016 WL 3033541 (E.D. La. May 6, 2016). The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Id.* (*citing Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982)).

### Rain and Obscured Windows

The plaintiff alleges, without elaboration, that rain leaked into the cells. Such allegation is insufficient to show a condition which was sufficiently serious as to deprive the plaintiff of minimally safe housing. *See Shannon v. Vannoy,* 682 F. App'x. 283 (5th Cir. 2017). The plaintiff's allegation that the windows were obscured likewise fails. *See Gibson v. Wong*, 2010 WL 2766084 (E.D. Ca. June 11, 2010) (allegation of inability to see through cell windows is a discomfort inherent to confinement that does not rise to the level of a constitutional violation).

### Cold Temperatures

The plaintiff additionally alleges that he was not provided with adequate clothing for the cold temperatures, windows were left open, and the heat was turned off. The plaintiff has failed to allege exposure to the type of extremely cold conditions that have been deemed a denial of the minimal measure of life's necessities. *See Palmer v. Johnson*, 193 F.3d 346, 353 (5th Cir. 1999) (finding such a denial in light of the inmate's "overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area"); *Alex v. Stalder*, 225 F. App'x 313, 314 (5th Cir. 2007) (reciting prisoner's nonfrivolous Eighth Amendment allegations that "he was held in very cold conditions, for an extended period in November and December, wearing nothing but a paper gown during the daytime, and that he was

ordered to remain on the cold concrete whenever he attempted to sleep on the warmer, metal

bunk").

### Double-Celling

The plaintiff also complains of being double celled while in administrative segregation.

In *West v. Thompson*, 2019 WL 6569756 (M.D. La. 11/20/19), this Court dismissed an identical

claim as frivolous, concluding that a policy requiring the double celling of inmates in segregation

was not unconstitutional:

> "The plaintiff complains of the policy of double celling inmates on protective
> custody while housed in administrative segregation. In *Bell v. Wolfish*, 441 U.S. 520, 542
> (1979), the United States Supreme Court indicated that there is no constitutional principle
> requiring "one man, one cell," and that the "double celling" of inmates is not a *per se*
> unconstitutional condition. Construing the plaintiff's "double celling" claim in the context
> of a civil rights action, it has no merit. *See Rhodes v. Chapman*, 452 U.S. 337, 349
> (1981); *Duncan v. Puckett*, 91 F.3d 137, 1996 WL 400039 (5th Cir. May 27, 1996)
> (upholding the dismissal, as frivolous, of an inmate's claim of being placed "in a single
> cell with another inmate"); *Thompson v. Stalder*, 2008 WL 874138, *7 (M.D. La. April 1,
> 2008) (finding that "the mere fact that an inmate may be double-celled for a period of
> time does not, as a matter of law, state a claim of constitutional dimension"); *Higgins v.
> Jefferson Parish Prison*, 1988 WL 24137, *3 (E.D. La. March 7, 1988) (claim of being
> housed in a cell with another inmate dismissed as frivolous)."

The plaintiff in *West* appealed and the appeal was dismissed as frivolous. The Fifth

Circuit stated in part: "he fails to demonstrate a nonfrivolous issue for appeal with respect to the

district court's determination that the policy was not unconstitutional. *See Rhodes v. Chapman*,

452 U.S. 337, 348-49, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Bell v. Wolfish*, 441 U.S. 520, 542,

99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)." Likewise, the plaintiff's identical allegations herein fail

to state a claim upon which relief may be granted.

### Lack of Radio/Television

The plaintiff alleges that he was not allowed a radio or television while housed in

administrative segregation. The plaintiff has no constitutional right to watch television or listen

to the radio, and neither activity is one of life's necessities or a basic human need. As such, the plaintiff fails to state a claim for an Eighth Amendment violation. *See Scheanette v. Davis*, 199 F. App'x. 336 (5th Cir. 2006).

*Outdoor Recreation*

The plaintiff alleges that he was not permitted outdoor recreation. He does not specify whether, for example, he lacked recreation, sunlight, fresh air, mental health, or exercise. While recreation and exercise are certainly identifiable life needs,[5] plaintiff does not allege that he could not exercise or engage in recreation in his cell. *See Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982) ("Of particular importance in determining an inmate's need for regular exercise are the size of his cell, the amount of time the inmate spends locked in his cell each day, and the overall duration of his confinement.") (internal footnotes omitted). The plaintiff's allegation that he was not permitted outdoor recreation does not describe a substantial risk of serious harm. The plaintiff does not claim that his inability to enjoy time outside constituted an extreme deprivation of a minimal civilized measure of life's necessities. As such, the plaintiff fails to state a claim with regards to his conditions of confinement.

**Access to the Courts**

With regards to the plaintiff's allegations of the lack of access to legal aid and legal materials while housed in administrative segregation, a substantive right of access to the courts has long been recognized. *Lewis v. Casey,* 518 U.S. 343, 347 (1996), *citing Bounds v. Smith,* 430 U.S. 817, 821 (1977). Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances. *Driggers v. Cruz,* 740 F.3d 333, 336–

---

[5] *See Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), amended in part, vacated in part, 688 F.2d 266 (5th Cir. 1982) (citing, favorably, other courts' opinions that "inmates need regular exercise to maintain reasonably good physical and psychological health.").

37 (5th Cir. 2014) citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731 (1983). In its most

obvious and fundamental manifestation, this right protects an inmate's physical access to the

courts. Thus, for example, prison officials may not block or refuse to transmit, through

procedural devices or otherwise, the transmission of legal documents that prisoners wish to send

to the courts. *Ex parte Hull,* 312 U.S. 546 (1941) (striking down a state regulation prohibiting

prisoners from filing petitions for habeas corpus without the approval of a state official); *Jackson*

*v. Procunier,* 789 F.2d 307, 310–11 (5th Cir. 1986) (prison officials may not deliberately delay

mailing legal papers when they know that such delay will effectively deny a prisoner access to

the courts). Nor can they take other actions—such as confiscating or destroying legal papers—

that would have a similar effect. *See Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.

1994), *citing Crowder v. Sinyard,* 884 F.2d 804, 811 (5th Cir.1 989). The fundamental

constitutional right of access to the courts also requires that prison authorities assist inmates in

the preparation and filing of meaningful legal papers by providing prisoners with adequate law

libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817,

828 (1977).

The right of access to the courts, however, "guarantees no particular methodology but

rather the conferral of a capability—the capability of bringing contemplated challenges to

sentences or conditions of confinement before the courts." *Lewis v. Casey, supra,* 518 U.S. at

356. Further, in order to prevail on a claim of interference with access to the courts, an inmate

claimant must be able to show that has he suffered some cognizable legal prejudice or detriment

as a result of the defendant's actions. *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996). In

addition, the plaintiff must be able to show that the defendant had an intent to interfere with the

plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the

plaintiff's wish to do so. *See Herrington v. Martin,* 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983"). Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*

In the present matter, the plaintiff has not identified with specificity any particular cause of action in which his rights were impeded or any jurisdiction within which such claims were brought. Nor has the plaintiff alleged that the deprivations stemmed from intentional conduct on the part of the defendants. Moreover, the plaintiff has not alleged to have suffered any legal prejudice or detriment as a result of the defendants' actions. As such, the Complaint fails to state a claim for denial of access to the courts.

**Grievances**

To the extent the plaintiff asserts that defendant McKey, or any other defendant, failed to properly handle his grievances, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings (including informal complaints) properly investigated, handled, or favorably resolved, *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States

Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the

context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due
> process rights resulting from the prison grievance procedures, the district court
> did not err in dismissing his claim as frivolous…[The plaintiff] does not have a
> federally protected liberty interest in having these grievances resolved to his
> satisfaction. As he relies on legally nonexistent interest, any alleged due process
> violation arising from the alleged failure to investigate his grievances is
> indisputably meritless. *Id*. at 373-74.

### Deliberate Indifference

A prison official violates the Eighth Amendment's prohibition of cruel and unusual

punishment if the official shows deliberate indifference to a prisoner's serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an

excessive risk to inmate health or safety" and "be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837

(1994). The official also must draw that inference. *Id.*

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a

claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A

prisoner who disagrees with the course of treatment or alleges that he should have received

further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of

Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison

officials denied him treatment, purposefully provided him improper treatment, or ignored his

medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was

the result of the prison official's deliberate indifference and substantial harm—including

suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

*Delayed Examination*

The plaintiff alleges that, after being attacked by an orderly on October 6, 2020, he informed defendant Howard several times that he was having severe rib pain. Defendant Howard stated that the plaintiff would be seen by medical, but defendant Howard did not contact the medical department. The plaintiff also informed defendant Gauthier of his need for medical care. However, the plaintiff additionally alleges that approximately one hour after the attack he was transferred to the CBC where he was seen by an EMT. The plaintiff does not allege that he suffered substantial harm during the approximate one-hour delay. As such, the plaintiff has failed to state a claim for deliberate indifference against defendant Howard.

*Threats of Self-Harm*

The plaintiff alleges that upon being informed by defendant Darbonne that he was being transferred, the plaintiff informed Darbonne that the deplorable, harsh, and extreme conditions in the unit cause him to self-harm. Defendant Darbonne left, and the plaintiff alleges that he cut his left wrist multiple times. The plaintiff additionally alleges that, due to his act of self-harm, he was placed on suicide watch after being transferred to the CBD.

The plaintiff does not allege that he informed defendant Darbonne that he intended to immediately harm himself prior to being transferred. Nor the does the plaintiff allege that defendant Darbonne knew the plaintiff had the means or ability to cut his wrist. As such, the plaintiff has not alleged that defendant Darbonne was aware of a substantial risk of harm and ignored the risk.

*Suicide Watch Checks*

With regards to the plaintiff's allegations regarding omitted or untimely suicide checks, the plaintiff is alleging a delay in care. However, the plaintiff has not alleged to have suffered any substantial harm during the delays between suicide checks.

*COVID-19*

The plaintiff also alleges that after being transferred to administrative segregation he was at risk of contracting COVID, and the officers working in the CBD/CBC failed to wear masks to protect the prisoners. In this regard, the plaintiff has failed to allege that any of the named defendants herein were deliberately indifferent to his serious medical needs. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.' " *Alderson v. Concordia Par. Corr'l Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation and quotation marks omitted). The plaintiff has not alleged that any defendant intentionally exposed him to COVID or was intentionally indifferent to a known safety or health risk for the plaintiff. As such, the plaintiff fails to state a claim for deliberate indifference in this regard.

*Self-Harm*

On October 13, 2020 the plaintiff cut himself, using a piece of metal from a broken light fixture in his cell, after being forced to double cell. He was not seen by mental health after making complaints to EMTs on October 14 and October 18, 2020, regarding thoughts of self-harm. On October 18, 2020, the plaintiff became very depressed and cut his left wrist with the pointed tip of a large screw protruding from the concrete ceiling. The plaintiff was treated by an EMT while being verbally harassed by Sgt. Harrell.

On October 20, 2020, the plaintiff submitted a health care request form regarding thoughts of self-harm to an EMT, and the EMT told him he would notify mental health. The plaintiff later cut his right wrist multiple times. When Defendant C. Gooden arrived at the plaintiff's cell, he told the plaintiff to remove his jumpsuit and the plaintiff complied. Defendant C. Gooden threw the jumpsuit, told the plaintiff he would contact mental health and left without searching the plaintiff's cell or jumpsuit for the implement used to cut his wrist.

The plaintiff was later seen by a social worker and was placed on standard suicide watch. An EMT observed the plaintiff in his cell but provided no medical treatment. Due to his mental state at the time, the plaintiff cut himself again on his right arm. He later cut the inside of his left wrist. Defendant Toby was summoned and told the plaintiff he would notify his supervisors and then left the tier. The plaintiff then cut himself multiple times on the outside of his wrist area. Defendant Toby again told the plaintiff he would notify his supervisors and then left the tier.

Defendants Young, Toby, and Lollis later came to the plaintiff's cell and informed him that he would be seen by medical. None of these defendants asked the plaintiff what he had cut himself with or searched his cell to find what was used.

On October 21, 2020, the plaintiff cut himself multiple times after the inmate in cell 7 flooded his cell with toilet water which seeped into the plaintiff's cell. The incident was reported to defendant Orr by Lt. Blackmore. When defendant Orr arrived, he asked Lt. Blackmore with a sarcastic tone, "You called me for this?" Defendant Orr told Lt. Blackmore, "The next time Corey cut himself don't pay any mind!" He then left the tier.

Based on the plaintiff's allegations, on October 20, 2020, defendant C. Gooden observed that the plaintiff's self-inflicted wounds, but failed to search for or even question the plaintiff with regards to the implement used to cut his wrist. On the same date, the plaintiff cut himself

again, and again defendant C. Gooden left the tier without searching the plaintiff's cell or questioning the plaintiff. Still on the same date, the plaintiff cut himself again and defendant C. Gooden again left the tier without searching the plaintiff's cell or questioning the plaintiff. As such, the plaintiff has alleged facts indicative of deliberate indifference on the part of defendant C. Gooden.

The plaintiff alleges similar behavior on the part of defendants Young, Toby, and Lollis who were all aware that the plaintiff had harmed himself but did not search the plaintiff's cell or question him with regards to the implement used to inflict his wounds. Additionally, the plaintiff's allegations show a wanton disregard for the plaintiff's serious medical needs on the part of defendant Orr who, in response to being informed of the plaintiff's self-inflicted wounds on October 21, 2020 asked, "You called me for this?" He then stated, "The next time Corey cut himself don't pay any mind!" prior to leaving the tier without taking any action to provide the plaintiff with medical or mental health care. Accordingly, the plaintiff has stated a claim for deliberate indifference with regards to defendants C. Gooden, Young, Toby, Lollis and Orr.

*Failure to Transfer*

The plaintiff alleges that defendant Dr. Gamble could have had the plaintiff transferred from administrative segregation but did not do so. The plaintiff does not allege he was treated or examined by Dr. Gamble while housed in administrative segregation. As such, the plaintiff has failed to allege that Dr. Gamble was aware of a substantial risk of harm to the plaintiff and ignored it by failing to have the plaintiff transferred. Plaintiff makes no allegations that defendant Dr. Gamble refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. The same applies to defendants B. Gooden and McKey who the

plaintiff implies could have had him transferred but did not do so. The failure to transfer claims against these defendants should be dismissed with prejudice.

**Excessive Force**

A use of force by a prison official is excessive and violates the Eighth Amendment to the United States Constitution only when such force is applied maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010), *quoting Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Not every malicious or malevolent action by a prison guard gives rise to a federal cause of action, however, and the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not of a sort "repugnant to the conscience of mankind." *Hudson v. McMillian, supra*, 503 U.S. at 10, *quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986).

The fact that an inmate may have sustained only minimal injury, however, does not end the inquiry, and an inmate who has been subjected to gratuitous force by prison guards "does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy, supra*, 559 U.S. at 38. Notwithstanding this, the Court may consider the extent of injury, if any, as potentially relevant to a determination whether an alleged use of force was excessive under the circumstances. In addition, other factors that may be considered in determining whether an alleged use of force has been excessive include the perceived need for the application of force, the relationship between the need for force and the amount of force utilized, the threat reasonably perceived by prison officials, and any efforts made to temper the severity of a forceful response. *Hudson v. McMillian, supra*, 503 U.S. at 7.

In the instant matter, the plaintiff alleges that he has always been allowed to have a sheet tied around his cell bars to block out the tier light. On August 25, 2021, he had a sheet tied around his cell bars. Defendant Orr approached the plaintiff's cell and cut a string with a knife. Defendant Orr then left and returned with a can of chemical agent. The plaintiff had removed the sheet, but defendant Orr still administered the chemical agent. As such, the plaintiff alleges that he had complied with defendant Orr's orders to remove the sheet, but force was still applied although no longer needed since order had already been restored. Accepting the plaintiff's allegations as true, the plaintiff has stated a claim for excessive use of force against Defendant Orr.

## Personal Involvement

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or

as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

In the instant matter, the plaintiff has not alleged personal involvement, on the part of defendants Thomas Sterling, Gabriel Hebert, James Arnold, Dr. Randy Lavespere, and Tracey Falgout. To the extent the plaintiff alleges that defendant Rheams is responsible for the actions of his subordinates, a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. The plaintiff has not alleged that defendant Rheams was personally involved in any action that resulted in a violation of the plaintiff's constitutional rights, or that his constitutional rights were violated due to a subordinate's implementation of defendant Rheams affirmative wrongful policies.

### Standing

To the extent the plaintiff raises issues regarding conditions of confinement or deliberate indifference on behalf of other inmates, persons claiming a deprivation of constitutional rights are required to show a deprivation of their personal rights, as opposed to the rights of others. *Coon v. Ledbetter*, 780 F.2d 1158, 1159 (5th Cir. 1986); *Barrows v. Jackson*, 346 U.S. 249, 255 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). In *Resendez v. Texas*, 440 F. App'x 305, 306 (5th Cir. 2011), for example, the court held that "to the extent that [the plaintiff] seeks to raise issues regarding the illegal confinement of other prisoners ..., he lacks standing to bring those claims."); *see Kennedy*

*v. Dallas Police Dep't*, 2007 WL 30260, at *2 (N.D. Tex. Jan. 4, 2007) (plaintiff may bring a Section 1983 action only for deprivations he suffered).[6]

In addition, Plaintiff may not function as counsel for other prisoners. *See, e.g., Wade v. Carrollton–Farmers Branch Indep. Sch. Dist.*, 2009 WL 2058446, at *2 (N.D. Tex. July 14, 2009) ("[I]ndividuals who do not have a law license may not represent other parties even on a next friend basis."). Parties can represent themselves or they can be represented by an attorney; a non-lawyer cannot represent them. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998).

**Americans with Disabilities Act ("ADA")
and Section 504 of the Rehabilitation Act ("RA")**

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. It defines "public entities" to include local governments. *Id.* at § 12131(1)(A). The United States Supreme Court has held that prisons are public entities that may not exclude disabled individuals from participation in or deny them the benefits of their services, programs, or activities. *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).

Similarly, the Rehabilitation Act prohibits any "otherwise qualified individual with a disability in the United States" from being "excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving

---

[6] *See also Gregory v. McKennon*, 430 F. App'x 306, 310 (5th Cir. 2011) (holding that the plaintiff "would lack standing to seek § 1983 damages for violations of other prisoners' rights...."); *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 281 (5th Cir. 1999), on reh'g en banc sub nom. *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462 (5th Cir. 2001) ("[W]hen making a determination of standing[,]" trial courts "are exhorted to consider ... whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties.").

Federal financial assistance," including any instrumentality of a local government. 29 U.S.C. § 794. The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the ADA. *Cadena*, 946 F.3d at 723 (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133)). "Thus, '[J]urisprudence interpreting either section is applicable to both.' " *Cadena*, 946 F.3d at 723 (citing *Delano-Pyle*, 302 F.3d at 574) (quoting *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)). Accordingly, the Court analyzes Plaintiff's ADA  and RA claims under one rubric. *See Guy v. LeBlanc*, 400 F. Supp. 3d 536, 540–41 (M.D. La. 2019)." (citations omitted). To demonstrate a violation of either Title II of the ADA or Section 504 of the RA, "a plaintiff must prove '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' " *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018).

*Individual Capacity*

To whatever extent, if any, that the defendants are being sued in their individual capacities, the plaintiff's ADA claims against them must be dismissed. The Supreme Court in *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–10 (1998), recognized that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities. The term "public entity" in Title II does not include individuals; therefore, individual defendants cannot be held personally liable for violations of Title II of the ADA. *Walker v. Snyder*, 213 F.3d 344, 347 (7th Cir. 2000), *abrogated on other grounds by Bd. of Trustees v. Garrett*, 531 U.S. 356, 374 n. 9 (2001), *as stated in Bruggeman ex rel. Bruggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003).

*Official Capacity*

An ADA suit against a state official in his or her official capacity is not a suit against the official but rather a claim against the official's office. *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 420 n.5 (5th Cir. 2017); *see Phillips ex rel. J.H. v. Prator*, No. 20-30110, 2021 WL 3376524, at *2 (5th Cir. Aug. 3, 2021) ("As a defendant she named Sheriff Prator in his official capacity, which means this is a suit against the Sheriff's Office."). Because the plaintiff brings suit against Louisiana Department of Public Safety and Corrections, any claims against the individual Defendants in their official capacities are duplicative of those against the entity itself. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999) ("[A] party may not maintain a suit against both an employer and its agent under Title VII."); *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1081 (5th Cir. 1985) ("The district court's entry of judgment against *both* the corporation and [defendant] in her official capacity [in this § 1983 action] would therefore effectively make the corporation liable twice for the same act."). Therefore, the plaintiff cannot bring ADA/RA claims against both Louisiana Department of Public Safety and Corrections and the individual defendants in their official capacities. *See Rojas v. City of Grand Prairie*, No. 3:18-CV-1776-K, 2019 WL 1115052, at *6 (N.D. Tex. Mar. 11, 2019) ("[Plaintiff] cannot bring an ADA action against [defendant] in [defendant's] official capacity because [plaintiff] is suing the City on the same facts."); *Harville v. Texas A & M Univ.*, 833 F. Supp. 2d 645, 659 n.8 (S.D. Tex. 2011) (dismissing RA claims against defendants in their official capacities because "those claims duplicate [plaintiff's] claims against [the entity]"); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 474 (N.D. Tex. 2003) (referencing *Indest*) ("The Fifth Circuit's rationale for prohibiting concurrent suits under Title VII against an employer and the employer's agent in her official capacity is equally applicable under the

ADA."). As such, the plaintiff's ADA/RA claims asserted against the individual defendants in their official capacities should be dismissed.

*Louisiana Department of Public Safety and Corrections*

With regards to the plaintiff's ADA/RA claims asserted against the Louisiana Department of Public Safety and Corrections, the plaintiff alleges that Title II of the ADA and § 504 of the RA are being violated by failing to make reasonable accommodations for the plaintiff's mental disabilities which include a traumatic brain injury and severe mental illness. The plaintiff asserts that he is punished for behavior that is a product of his mental disabilities, resulting in him being placed in administrative segregation where he does not receive mental health services sufficient to counteract the effects of segregation. Additionally, the plaintiff alleges that he and other inmates with mental illness are routinely warehoused in administrative segregation, extended lockdown, and solitary confinement.

The plaintiff's allegations are similar to those raised by the plaintiff subclass in *Tellis v. LeBlanc*, 2022 WL 67572 (W.D. La. Jan. 6, 2022). In *Tellis,* the plaintiff subclass alleged that, at the David Wade Correctional Center ("DWCC"), they are inmates with qualifying mental disabilities who are discriminated against because DWCC does not limit the use of extended lockdown for inmates with a severe mental illness or consider these inmates' mental health when placing them in extended lockdown. As such, the plaintiff subclass alleged a failure to make a reasonable accommodation as required.

Defendants in the instant matter argue that the plaintiff has failed to allege that he is treated any differently from other inmates in the CBD/CBC. Specifically, defendants note the plaintiff's failure to identify any services or programs provided by the Louisiana Department of Public Safety and Corrections that he has not been allowed due to his disability, and does not

allege that other inmates receive activities, services, programs, education, recreation, exercise or mental health treatment differently than he does. However, as did the plaintiff subclass in *Tellis*, the plaintiff alleges that it is the failure to treat him differently, in a way which accommodates his mental illness, that is discriminatory. The plaintiff is alleging that the failure to treat him differently from other inmates by not considering his mental illness prior to or after placing him in segregation violates the ADA/RA.

"Failure to make reasonable accommodations to the needs of a disabled prisoner may have the effect of discriminating against that prisoner because the lack of an accommodation may cause the disabled prisoner to suffer more pain and punishment than non-disabled prisoner." *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 746 (M.D. La. 2016): (quoting *McCoy v. Tex. Department of Criminal Justice*, 2006 WL 2331055, at *7 (S.D. Tex. 2006)); *see also Georgia*, 546 U.S. at 157; *Patrick*, 2020 WL 4040969 at *39. "[W]here the defendant otherwise had knowledge of the individual's disability and needs but took no action," not even the failure to expressly request a specific accommodation (or modification) fatally undermines an ADA claim. *See Cleveland* , 198 F. Supp. 3d 717, 746 (citing *Greer v. Richardson Independent School District*, 472 Fed. Appx. 287, 296 (5th Cir. 2012)); *see also Borum v. Swisher County*, 2015 WL 327508, at *9 (N.D. Tex. 2015); *Hinojosa v. Livingston*, 994 F. Supp. 2d 840, 843–44 (S.D. Tex. 2014). As such, the plaintiff has stated a claim against defendant Louisiana Department of Public Safety and Corrections for violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act ("RA"), and the defendants' Motion should be denied in this regard.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that Defendants' Motion to Dismiss (R. Doc. 19) be granted, in part, dismissing the plaintiff's § 1983 claims (1) for monetary damages

asserted against the defendants in their official capacities, (2) retaliation, (3) unconditional conditions of confinement, (4) denial of access to the courts, (5) failure to respond to his grievances and/or informal complaints, (6) for deliberate indifference asserted against defendants Howard, Gauthier[7], Darbonne, Dr. Gamble, B. Gooden, and McKey, (7) all claims asserted against defendants Louisiana Department of Public Safety and Corrections, Sterling, Hebert, Arnold, Lavespere, Falgout, and Rheams, and (8) any claims the plaintiff is attempting to bring on behalf of other inmates, with prejudice. It is further recommended that the plaintiff's ADA/RA claims asserted against the individual defendants, in both their individual and official capacities, be dismissed with prejudice. It is further recommended that the plaintiff's claims against defendant Jane Doe be dismissed, without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).

It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings herein regarding the plaintiff's claims § 1983 for (1) failure to protect on the part of defendant Howard, (2) deliberate indifference on the parts of defendants C. Gooden,[8] Young, Toby, Lollis, and Orr, and (3) use of excessive force by defendant Orr; and the plaintiff's ADA/RA claims asserted against the Louisiana Department of Public Safety and Corrections.

Signed in Baton Rouge, Louisiana, on February 6, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[7] Although defendants Gauthier and B. Gooden have not yet been served, the plaintiff has failed to state a claim against these defendants for the reasons set forth herein. As such, the Court may grant a motion to dismiss with respect to these non-moving defendants *sua sponte* after giving Plaintiff notice and a reasonable time to respond. The objection period which follows this Report and Recommendation, as set forth in 28 U.S.C. § 636(b)(1) and Federal of Civil Procedure 72(b), satisfies the notice requirement. *See Treadway v. Wilkinson,* 2008 WL 4224817, n.3, (W.D. La. June 10, 2008).

[8] Defendants C. Gooden and Toby have not yet been served. The Court will issue a separate Order pertaining to the identity and/or last known addresses of these defendants and an extension of the time for service.