**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

COREY MARQUEE ADAMS

VERSUS

LOUISIANA DEPARTMENT OF
CORRECTIONS, ET AL.

CIVIL ACTION

22-20-SDD-RLB

## RULING

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants, the Louisiana Department of Public Safety and Correctors ("LDPSC"), Michael Howard, Charles Gooden, Roger Young, Michael Lollis, and John Orr (collectively, the "Defendants").[1] Plaintiff, Corey Marquee Adams, ("Adams" or "Plaintiff") filed an Opposition to which Defendants filed a Reply.[2] For the following reasons, the motion will be granted in part and denied in part.

## I.    BACKGROUND AND PROCEDURAL FACTS

Plaintiff is an inmate incarcerated at Louisiana State Penitentiary ("LSP").[3] On January 10, 2022, Plaintiff filed suit against numerous defendants, pursuant to 42 U.S.C. § 1983, the American Disabilities Act, 42 U.S.C. 12101, et seq. (the "ADA"), and Section 504 of the Rehabilitation Act, 29 U.S. 794 (the "RA").[4] Defendants moved to dismiss Plaintiff's claims.[5] The Magistrate Judge recommended 12(b)(6) dismissal of all of Plaintiff's claims except for: (1) Plaintiff's § 1983 failure to protect claim against Howard;

---

[1] Rec. Doc. 103.
[2] Rec. Docs. 127 and 128.
[3] Rec. Doc. 1-1, p. 1.
[4] Rec. Doc. 1.
[5] Rec. Docs. 16 and 19.

(2) his § 1983 deliberate indifference claims against Gooden, Young, Lollis, Orr, and Charles Tolbert; (3) his § 1983 excessive force claim against Orr; and (4) his ADA/RA claims against LDPSC.[6] The Court adopted the Magistrate Judge's recommendations.[7] Now, movants seek summary judgment on these remaining claims.

## II.  LAW AND ANALYSIS

### A.  Summary Judgment Standard

Summary Judgment should granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10] If the moving party "fails to meet this

---

[6] Rec. Doc. 27. At the time of the Magistrate Judge's recommendation, Defendants Charles Gooden and Charles Tolbert (aka "Toby") had not been served. The Magistrate Judge ordered that Defendants provide the Court with personal information regarding Charles Gooden and Charles Tolbert so that Plaintiff would be able to serve these defendants. Rec. Doc. 28. Gooden was served and filed his answer to Plaintiff's complaint on June 20, 2023. Rec. Doc. 80. However, on December 8, 2023, Tolbert moved for 12(b)(5) dismissal arguing Plaintiff failed to effect service on him. Rec. Doc. 131. The Court denied Tolbert's motion and provided Plaintiff with additional time to effect service on Tolbert. Rec. Doc. 137. Additionally, the Court ordered that once Tolbert is served he shall file a responsive pleading, or in the alternative, Defendants shall supplement the instant motion by joining Defendant Tolbert. *Id.* As of the writing of this Ruling, though the Court has provided Plaintiff with multiple extensions of time, Plaintiff has not effected service on Tolbert.
[7] Rec. Docs. 30 and 35.
[8] *Basil v. Dow Chem. Co.*, 2020 WL 1964155, at *1 (M.D. La. Apr. 23, 2020).
[9] *Id*.
[10] *Id*.

initial burden, the summary judgment must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubts as to the facts, or a scintilla of evidence. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[12] The Court will not, "in the absence of any proof assume that the nonmoving party could or would prove the necessary facts."[13] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.

## B. Failure to Exhaust

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an action under § 1983 until he exhausts administrative remedies.[14] 42 U.S.C. § 1997e(a) states that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

---

[11] *Id.*
[12] *Id.* at *2.
[13] *Id.*
[14] 42 U.S.C. § 1997e(a).

The Supreme Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes."[15] The Supreme Court made clear that exhaustion is mandatory.[16] Moreover, the Fifth Circuit instructs that the exhaustion requirement must be completed prior to filing suit, stating:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.[17]

Exhaustion is an affirmative defense; thus, the "[d]efendant bears the burden of demonstrating that [p]laintiff failed to exhaust available remedies."[18] "When courts rule on exhaustion on the basis of evidence beyond the pleadings, the nonmoving party should be granted the protections of Rule 56."[19]

In Louisiana, there is a "two-step Administrative Remedy Procedure (ARP)" that an inmate must follow to exhaust administrative remedies before filing suit in Federal Court:[20]

> An inmate initiates the ARP process by completing a request for administrative remedy or writing a letter to the warden. *Id*. at § 325(G)(1)(a)(i). An ARP screening officer screens the inmate's request and either accepts the request into the first-step or rejects it for one of ten enumerated reasons. *Id*. at § 325(I)(1)(a)(i)–(ii). Once the request is accepted, the warden must respond on a first-step response form within forty (40) days of receipt of the request. *Id*. at § 325(J)(1)(a)(ii). If the inmate

---

[15] *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[16] *Id*. at 524.

[17] *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Wherein the 5th circuit tacitly overruled their decision in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998) after reviewing the Supreme Court decisions in *Woodford v. Ngo*, 548 U.S. 81 (2006) and *Jones v. Bock*, 549 U.S. 199 (2007).

[18] *Douglas v. Anderson*, 2017 WL 4052158, at *2 (M.D. La. Sept. 13, 2017).

[19] *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010).

[20] *Abbott v. Babin*, 2016 WL 3951625, at *3 (M.D. La. July 21, 2016) (citing La. Admin. Code, Title 22, pt. I, § 325 (2013)).

is not satisfied with the response, he may proceed to the second-step of the ARP process by appealing to the Secretary of the Department of Corrections ("DOC Secretary") using a space provided on the first-step response form. *Id*. at § 325(J)(1)(b)(i)–(ii). The DOC Secretary is required to issue a response within forty-five (45) days from the date the request is received utilizing a second-step response form. *Id*. at § 325(J)(1)(b)(ii). The expiration of any response time limits entitle the inmate to move to the next step in the process. *Id.* at § 325(J)(1)(c)."[21]

Defendants argue that Plaintiff failed to exhaust (1) the deliberate indifference claims against Gooden, Young, Lollis, and Orr; (2) the excessive force claim against Orr; and (3) the ADA/RA claims against LDPSC.[22] They point the Court to numerous LSP ARPs filed by Plaintiff.[23] In response, Plaintiff asserts that he has exhausted all of his claims through ARP LSP 2020-2954, ARP LSP 2020-3175, ARP LSP 2020-3176, and ARP LSP 2020-2895.[24] Accordingly, the Court will limit its consideration of exhaustion to these four ARPs.

### 1. ARP LSP 2020-2954

This ARP was accepted at the first step, and Plaintiff received responses at the first and second steps.[25] Accordingly, this ARP was properly exhausted. This ARP complains that "[t]he conditions at CBD/CBC are extreme, harsh and constitutional."[26] CBC refers to "Cellblock C" and CBD refers to "Cellblock D." Plaintiff attached two prior ARPs, LSP 2020-2740 and LSP 2020-2748 as "'_evidence_' to substantiate and support" this grievance.[27] These two ARPs complain about Gooden, Young, Lollis, Orr, and Howard.[28] However, they were both rejected at the first step due to "multiple

---

[21] *Id.*
[22] Rec. Doc. 103-1, pp. 5–20.
[23] *Id*.
[24] Rec. Doc. 127, p. 2, n.2.
[25] Rec. Doc. 103-5, pp. 16–25.
[26] *Id.* at p. 19.
[27] *Id*. (emphasis in original).
[28] *Id.* at pp. 4–7, 12–14.

complaints."[29] In the second step response for ARP LSP 2020-2954, the DOC Secretary provided that these other grievances were rejected; consequently, Plaintiff "failed to provide any evidence to substantiate [his] allegations."[30] Defendants argue that references to rejected ARPs do not qualify as exhausting administrative remedies.[31] They contend that attaching previously rejected ARPs to another ARP does not cure their defects.[32] Further, allowing Plaintiff to use ARP LSP-2020-2954 to exhaust the claims that are referred to in ARP LSP-2020-2740 and ARP LSP-2020-2748 would be "circumvent[ing] the exhaustion requirement."[33] The Court agrees.

In *Abbott v. Babin,* a plaintiff failed to exhaust his administrative remedies when he resubmitted a previously rejected ARP because the "merits of his allegations were never considered under the First Step of the ARP."[34] The plaintiff urged that his ARP proceeded to the second step. The Fifth Circuit found that the plaintiff received a second step response, but "the response itself contained no discussion of the facts or merits of [the plaintiff's] complaints, as would usually occur at Step Two of an accepted ARP."[35] Accordingly, the Fifth Circuit affirmed dismissing the plaintiff's claim.[36] *Abbott* is somewhat analogous to the facts herein. Here, ARP LSP 2020-2954, on its own, provides conclusory allegations concerning the conditions at Cellblock D ("CBD") and Cellblock C ("CBC"), and does not mention any of the Defendants. And while the two attached ARPs mention the Defendants, these ARPs were rejected at the first step, and the merits of these

---

[29] *Id.* at pp. 3, 11.
[30] *Id.* at p. 24.
[31] Rec. Doc. 103-1, p. 11.
[32] *Id.*
[33] *Id.*
[34] 587 F. App'x 116, 118 (5th Cir. 2014) (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).
[35] *Id.*
[36] *Id.*

grievances were never considered. Further, although Plaintiff received a second step response for ARP LSP 2020-2954, the response did not contain any discussion of the facts or merits of Plaintiff's complaints in LSP-2020-2740 and LSP-2020-2748. Accordingly, although ARP LSP 2020-2954 was properly exhausted, it is insufficient to place Defendants on notice of Plaintiff's deliberate indifference, excessive force, failure to protect, or ADA/RA claims.

### 2. ARP LSP 2020-3176

This ARP was accepted at the first step, and Plaintiff received responses at the first and second steps.[37] Accordingly, this ARP was properly exhausted. This ARP complains of Sergeant Magee and Captain Howard who Plaintiff alleges watched him get attacked on October 6, 2020.[38] Plaintiff alleges the same in his failure to protect claim against Howard. Accordingly, this ARP is sufficient to show that Plaintiff exhausted his administrative remedies in relation to his failure to protect claim against Defendant Howard. However, this ARP is insufficient to put the other Defendants on notice of his deliberate indifference, excessive force, or ADA/RA claims.

### 3. ARP LSP 2020-2895

This ARP was accepted at the first step, and Plaintiff received responses at the first and second steps.[39] Accordingly, this ARP was also properly exhausted. This ARP complains about Plaintiff's placement on disciplinary detention and his experiences being transferred to CBC from the Transitional Unit (the T.U.").[40] Specifically, he writes about

---

[37] Rec. Doc. 103-5, pp. 37–53.
[38] *Id.* at pp. 39, 41.
[39] *Id.* at pp. 162–172.
[40] *Id.* at p. 164.

losing certain privileges and being "double celled."[41] Plaintiff complains that the "severe mentally ill (like [Plaintiff]) are not allowed any other property but legal work and a state jumpsuit."[42] Further he complains that the conditions at CBD "cause[] [Plaintiff] to harm himself" and "depress[] him to a point which he does not take his mental health/medications."[43] Plaintiff asserts that he "and other prisoners have a right to be housed in a humane and safe environment."[44] Plaintiff represents that the T.U. is a unit that serves prisoners with mental health conditions, and Defendants do not dispute this fact.[45] Plaintiff claims that LDPSC violated the ADA and RA by placing him in CBC and CBD, "despite being aware that [Plaintiff]'s mental disability made the conditions in those units more dangerous for him" than for other prisoners who do not suffer from a mental disability.[46] Much of his ARP mirrors his RA/ADA claims. Accordingly, LDPSC was sufficiently put on notice. But this ARP did not notice Defendants of Plaintiff's excessive force or deliberate indifference claims.

### 4. ARP LSP 2020-3175

This ARP was accepted at the first step, and Plaintiff received responses at the first and second steps.[47] Thus, this ARP was properly exhausted. Although much of this ARP is illegible, in reviewing parts that are legible, it tracks much of the same allegations that are made in ARP LSP 2020-2895.[48] The Court finds that this ARP sufficiently put LDPSC on notice of the ADA/RA claims but failed to place Defendants on notice of the

---

[41] *Id.*
[42] *Id*.
[43] *Id*.
[44] *Id*.
[45] Rec. Doc. 127, p. 6.
[46] *Id.* at p. 17.
[47] *Id.* at pp. 26–36.
[48] *Id.* at pp. 29–30.

deliberate indifference or excessive force claims. After Plaintiff received a first step response for this ARP, Plaintiff asserted that he was not satisfied with the first step and wanted to proceed to step two.[49] When making this assertion, Plaintiff made references to ARPs that were rejected at the first step.[50] These rejected ARPs make allegations against Gooden, Young, Lollis and Orr.[51] As explained above, without the merits of these grievances being considered, they were not exhausted.

In summary, Plaintiff properly exhausted his ADA/RA claims and his 1983 failure to protect claim against Howard. However, Plaintiff failed to exhaust his deliberate indifference and excessive force claims. Accordingly, all claims brought against Gooden, Young, Lollis, and Orr are premature and are therefore dismissed without prejudice.

### C. Prescription

With respect to prescription, "[t]here is no federal statute of limitations for actions brought pursuant to 42 U.S.C § 1983. It is well established that federal courts borrow the forum state's general personal injury limitations period."[52] In Louisiana, the relevant prescriptive period is one year.[53] State law also governs tolling, unless the state provisions regarding tolling are inconsistent with federal law.[54]

---

[49] *Id.* at p. 34.
[50] *Id.*
[51] *Id.* at pp. 4–7, 12–14.
[52] *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). *See also, Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) ("Federal courts borrow state statutes of limitations to govern claims brought under section 1983."); *White v. Gusman*, 347 Fed. App'x. 66, 67 (5th Cir. 2009) ("The prescriptive period for a claim brought under § 1983 is provided by the law of the state in which the claim arose.").
[53] La. Civ. Code art. 3492; *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002). The Court acknowledges that La. Civ. Code art. 3492 was repealed in its entirety by Acts 2024, No. 423 § 2. TORT ACTIONS, 2024 La. Sess. Law Serv. Act 423 (H.B. 315) (WEST). However, Section 3 of Acts 2024, No. 423 provides that the Act's provisions will "be given prospective application only and shall apply to delictual actions arising after the effective date of this Act." *Id.* at § 3. The Act became effective July 1, 2024. *Id.* at § 4. Accordingly, because this action was filed prior to the change in law, the one-year prescription period still applies.
[54] *Bd. of Regents v. Tomanio*, 446 U.S. 478, 484 (1980).

Though the Louisiana prescriptive period of one year applies to Plaintiff's claims, federal law governs when his claims accrued.[55] Accrual is a question of federal law, and the critical inquiry is "when the plaintiff knows or has reason to know of the injury which is the basis of the action."[56] Once an action accrues, a grievance should be filed to begin the process of exhaustion. Because inmate-plaintiffs are required to exhaust administrative remedies prior to filing suit, prescription is suspended while a grievance is pending because of the statutorily created impediment to filing suit, which requires an inmate to exhaust his claims.[57]

Defendants argue that Plaintiffs' deliberate indifference claims and the ADA/RA claims are prescribed.[58] Because the Court found that Plaintiff failed to exhaust the deliberate indifference claims against Gooden, Young, Lollis, and Orr, there is no need for the Court to address prescription as to these claims. However, regarding the ADA/RA claims against LDPSC, the Court finds that the claims are not prescribed. As stated above, Plaintiff asserts that the only ARPs at issue are ARP LSP 2020-2954, ARP LSP 2020-3175, ARP LSP 2020-3176, and ARP LSP 2020-2895 as it is his "position that he has exhausted all of his claims through these ARPS."[59] Further, the Court found that ARP LSP 2020-2895 was exhausted and sufficiently put LDPSC on notice of his ADA/RA claims. Thus, ARP LSP 2020-2895 is the ARP at issue for deciding whether his ADA/RA claims are prescribed. Prescription is an affirmative defense,[60] and Defendants do not

---

[55] *Harris*, 198 F.3d, at 157.
[56] *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993).
[57] La. Civ. Code art. 3467; *Kron v. LeBlanc*, 2013 WL 823550, at *2 (E.D. La. March 6, 2013).
[58] Rec. Doc. 103-1, p. 22.
[59] Rec. Doc. 127, p. 2, n.2.
[60] *See Satterfeal v. LoanCare*, LLC, 2019 WL 5704929, at *2 (M.D. La. Nov. 5, 2019) (calling prescription an affirmative defense); *See also Courtney v. Piggly Wiggly*, 2018 WL 9362571, at *3 (M.D. La. Mar. 6, 2018) (stating that prescription is an affirmative defense).

dispute that ARP LSP 2020-2895 was exhausted and is not prescribed. Accordingly, the Court denies summary judgment on the grounds of prescription.

### D.  Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[61] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .[62]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[63]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[64] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[65]

---

[61] *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981).
[62] 42 U.S.C. § 1983.
[63] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985); *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985).
[64] *See Blessing v. Freestone*, 520 U.S. 329, 340 (1997); *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984).
[65] *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986).

## 1. Failure to Protect

Pursuant to § 1983, Plaintiff alleges that Howard, in his individual capacity, failed to protect Plaintiff when he was being attacked by an inmate orderly. Specifically, Plaintiff alleges that on October 6, 2020, Plaintiff and the orderly got into a heated argument.[66] Later that day, while Howard was escorting Plaintiff to disciplinary court, the orderly told Plaintiff that he would attack him on his way back from court.[67] Plaintiff alleges that Howard "deliberately ignored" this statement.[68] Following the court proceedings, the orderly walked up to Plaintiff with a "balled fist."[69] Plaintiff testified that the orderly hit him in the ribs and punched him in the face.[70] He alleges that instead of Howard activating his emergency beeper, he merely stood and watched the altercation.[71] Defendants do not dispute that Plaintiff was in this altercation. They assert summary judgment is warranted because Howard is entitled to qualified immunity.[72]

The qualified immunity defense operates to protect public officials who are performing discretionary tasks.[73] The Court employs a two-step analysis. Viewing the facts in the light most favorable to Plaintiff, the Court first considers whether the conduct violated the Plaintiff's constitutional rights and second, considers whether the rights allegedly violated were clearly established at the time the violation occurred. Courts have

---

[66] Rec. Doc. 1-1, p. 3, ¶23.
[67] *Id.* at ¶27.
[68] *Id.* at ¶28.
[69] *Id.* at ¶29.
[70] Rec. Doc. 103-6, pp. 9–10, Dep. Transcript 29:18–31:2, 33:20–23.
[71] Rec. Doc. 1-1, p. 3, ¶30.
[72] Rec. Doc. 103-1, p. 22.
[73] *Hensley v. Harrell*, 2024 WL 3513869, at *2 (M.D. La. July 22, 2024) (citing *Huff v. Crites*, 473 Fed.App'x. 398, 399 (5th Cir. 2012)).

discretion to decide which of the two prongs of the analysis to address first.[74] On summary judgment, "[o]nce a defendant pleads qualified immunity, the burden shifts to [the] [p]laintiff who 'must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct.'"[75]

Under the Eighth Amendment, a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates.[76] Although prison officials generally "have a duty. . .to protect prisoners from violence at the hands of other inmates,"[77] "[p]rison officials are not. . .expected to prevent all inmate-on-inmate violence."[78]

"Deliberate indifference" is the standard applied in evaluating a failure to protect claim. This term has been defined as including an element of "subjective recklessness" as used in the criminal law.[79] An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate. . .safety" and disregards that risk.[80] A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps

---

[74] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-ponged analysis in a particular order – should not be "regarded as an inflexible requirement")).
[75] *Tasby v. Cain*, 2017 WL 4295441, at *5 (M.D. La. Sept. 12, 2017), report and recommendation adopted, 2017 WL 4322413 (M.D. La. Sept. 28, 2017) (quoting *Gates v. Texas Dep't. of Protective and Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)).
[76] *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986).
[77] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[78] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).
[79] *Farmer*, 511 U.S. at 837.
[80] *Id.*

to avoid it.[81] In other words, for there to be liability in connection with this cause of action, there must exist an intent on the part of security officers to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.[82] The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference.[83] Mere negligence or "failure to alleviate a significant risk that [the official] should have perceived but did not" are insufficient to establish a failure to protect claim.[84] Deliberate indifference requires a level of awareness of a specific risk based upon specific information, such that general knowledge of general dangerousness or the like is not enough to support a failure to protect claim.[85]

The Court finds that summary judgment should be denied. The parties dispute whether Howard was present when the altercation began. In his affidavit, Howard declares that prior to the altercation, he escorted Plaintiff to Sergeant Magee and handed Plaintiff to Sergeant Magee.[86] Howard declares that he was "not present" when the alteration occurred and was not in Plaintiff's "range of vision" but did break up the altercation between Plaintiff and the orderly.[87] In contrast, Plaintiff testified that he was with Howard "the whole time," and he denied ever being handed to Sergeant Magee.[88]

---

[81] *Id.* at 847.
[82] *Johnston*, 786 F.2d at 1259.
[83] *Farmer*, 511 U.S. at 837.
[84] *Id.* at 838. *See also, Domino v. Texas Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Farmer*, 511 U.S. at 838).
[85] *Walker v. Davis*, 2019 WL 2465298, at *8 (E.D. Tex. Jan. 10, 2019). *See also Van Williams v. Samaniego*, 2007 WL 9701460, at *3 (W.D. Tex. Feb. 22, 2007) (citation omitted) ("General knowledge about another inmate's violent tendencies, without more specific information about the risk, does not rise to the requisite level of awareness necessary for a finding of deliberate indifference.").
[86] Rec. Doc. 103-7, p. 2 ¶¶ 5–6.
[87] *Id.* at ¶¶5, 7.
[88] Rec. Doc. 103-6, p. 8, Dep. Transcript 26:24–27:3, 28:3–4, and 29:14–20.

Plaintiff further testified that the orderly walked up to him "with his hands balled," and "Howard was right there and [] didn't do nothing."[89] Plaintiff claims that normally, if there are unrestrained offenders in the walkway, LSP officers will "tell them [to] clear the area" so that they can pass without threat of attacks.[90] However, Howard failed to do this, which allowed the orderly inmate to punch him.[91] Plaintiff testified that the altercation seemed like a "set up."[92] Plaintiff's testimony is in stark contrast to Howard's affidavit. Viewing the facts in a light most favorable to Plaintiff, there is summary judgment evidence that creates a genuine issue of material fact as to whether Howard was present when the orderly threatened the Plaintiff, watched him get hit, and failed to adequately respond. If proven, Plaintiff's right to be sheltered from violence was violated, and this right was clearly established at the time of the violation. Further, Plaintiff has raised genuine issues of material fact regarding the reasonableness of Howard's conduct. A reasonable jury could view these facts and find it unreasonable for an LSP officer to remain passive during an attack of an inmate who was in the officer's custody. Accordingly, summary judgment is denied on these grounds.

Defendants also urge that summary judgment is warranted because there is no genuine dispute that "Plaintiff suffered, at most, *de minimis* injury, which is insufficient to support a failure to protect claim."[93] Plaintiff counters that he is not required to show significant injury to satisfy his claim.[94]

---

[89] *Id.* at p. 9, Dep. Transcript 30:7–8.
[90] *Id.*, Dep. Transcript 30:9–14.
[91] *Id.*, Dep. Transcript 30:16–17.
[92] *Id.*, Dep. Transcript 32:12–13.
[93] Rec. Doc. 103-1, p. 25.
[94] Rec. Doc. 127, pp. 14–15.

The Fifth Circuit has not had many opportunities to examine the level of injury that is required for a failure to protect claim. In *Jones v. Greninger*, the court considered a lower court's dismissal of a failure to protect claim.[95] The court explained that the PLRA bars "recovery for emotional or mental damages absent a physical injury."[96] The plaintiff's complaint and reply did not allege any physical injury; thus, the court affirmed the lower court's dismissal.[97] In *Walzier v. McMullen*, the Fifth Circuit affirmed dismissing a failure to protect claim because the plaintiff failed to show that other inmates had harmed him.[98] Finally, in *Ruiz v. Price*, the court found that the plaintiff failed to sustain a failure to protect claim because he did not allege a "more-than-de-minimus" injury.[99] The court cited *Harper v. Showers* to reach its decision.[100] In *Harper*, the Fifth Circuit considered an Eighth Amendment claim alleging cruel and unusual punishment.[101] The court "determined that the 'physical injury' required by § 1997e(e) 'must be more than de minimus, but need not be significant,'"[102] and affirmed dismissal because the plaintiff failed to allege a physical injury.[103]

In summary, Fifth Circuit jurisprudence suggests that the key inquiry for a failure to protect claim is whether a physical injury has been alleged, not merely an emotional or mental injury. Here, Defendants point to *Outley v. Batiste*, in which another judge in this district explained, "there is no bright line rule for what amounts to more than a *de minimis* injury, courts have taken a 'common-sense' approach to determining whether an injury is

---

[95] 188 F.3d 322 (5th Cir. 1999).
[96] *Id*. at 326.
[97] *Id*.
[98] 333 F. App'x 848, at *2 (5th Cir. 2009).
[99] 84 F. App'x 393, 395 (5th Cir. 2003).
[100] *Id*.
[101] 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).
[102] *Id*.
[103] *Id*.

*de minimis*."[104] In this ruling, the Court relied on *Luong v. Hatt,* in which the Northern District of Texas found that "scrapes, scratches, cuts, abrasions, bruises, pulled muscles, leg aches, etc." are insufficient injuries for a failure to protect claim.[105] The *Luong* court concluded that a "physical injury" must be one that is an "observable or diagnosable medical condition requiring treatment by a medical care professional."[106] The Court agrees with the *Luong* court that a "common-sense approach" should be administered in its analysis. But, considering the Fifth Circuit's conclusion that an injury "need not be significant," the Court disagrees with the conclusion that there must be an "observable or diagnosable medical condition," to sustain a failure to protect claim. The Court finds that there is a broad range of *physical* injury types and circumstances that are sufficient to sustain a failure to protect claim.

Here, there are genuine issues of material fact regarding Plaintiff's alleged injury. Defendants argue that Plaintiff's injury was not significant because his only injury was "severe rib pain."[107] They urge that Plaintiff "had no signs of bruising or discoloration," and was only prescribed ibuprofen.[108] Further, they argue that, "[o]ther than Plaintiff making subjective complaints on two occasions, Plaintiff has no evidence that he suffered any injury."[109] Conversely, Plaintiff testified that he was hit in the ribs and punched in the face.[110] Defendants rely on the fact that Plaintiff did not complete a health request form until two days after the altercation.[111] But, Plaintiff testified that on the day of the

---

[104] 2020 WL 6789326, at *3 (M.D. La. Nov. 18, 2020) (quoting *Luong v. Hatt*, 979 F.Supp. 481, 486 (N.D. Tex. Sept. 11, 1997)).
[105] *Luong*, 979 F. Supp. at 486.
[106] *Id.*
[107] Rec. Doc. 103-1, p. 25 (citing Rec. Doc. 1-1, ¶33).
[108] *Id.* (citing Rec. Doc. 103-6, p. 62).
[109] *Id.* at p. 26.
[110] Rec. Doc. 103-6, p. 9–10, Dep. Transcript 29:18–31:2, 33:20–23.
[111] Rec. Doc. 103-1, p. 25 (citing Rec. Doc. 58 and Rec. Doc. 103-6, p. 62).

altercation he tried to get medical attention, and he testified that EMT came to see him that same day.[112] Accordingly, Plaintiff has raised genuine issues of material fact pertaining to his injuries and their purported severity. The motion is denied as it relates Plaintiff's failure to protect claim against Defendant Howard.

### E. ADA/RA Claims

Under Title II of the ADA and Section 504 of the RA, a prisoner may bring claims against their jailors for disability discrimination.[113] A plaintiff must "show that: (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity which provides the service, program, or activity is a public entity."[114]

In the prison context, a "public entity" is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."[115] Thus, prisons are not required to "provide *new* services or programs for disabled prisoners," but they "do have an affirmative obligation to make reasonable modifications. . . so that a disabled prisoner can have meaningful access to *existing* public services or programs."[116] "[T]he Fifth Circuit has held that a defendant's failure to

---

[112] Rec. Doc.103-6, pp. 10–11, Dep. Transcript 33:8–10, 35:18–22, 37:17–38:3.
[113] *George v. Louisiana Dep't of Pub. Safety & Corr.*, 2016 WL 3568109, at *8 (M.D. La. June 23, 2016) (citing *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209–10 (1998) and *Frame v. City of Arlington*, 657 F.3d 215, 224–25 (5th Cir. 2011)).
[114] *Id.* (quoting *Douglas v. Gusman*, 567 F. Supp. 2d 877, 889 (E.D. La. 2008)).
[115] *Id.* at *9 (quoting 28 C.F.R. § 35.130(b)(7) and citing *Garrett v. Thaler*, 560 Fed.Appx. 375, 382 (5th Cir. 2014) for the proposition that this has been applied in the prison context)).
[116] *Id.* (quoting *Borum v. Swisher Cnty.*, 2015 U.S. Dist. LEXIS 8628, at *21, 2015 WL 327508, at *9 (N.D. Tex. Jan. 26, 2015)).

make the reasonable modifications necessary to adjust for the unique needs of disabled persons can constitute intentional discrimination under the ADA."[117]

The parties do not dispute that Plaintiff was moved from the T.U. to disciplinary segregation in CBC and that, between October 6 and December 29, 2020, Plaintiff was transferred back and forth between CBC and CBD.[118] During this time, Plaintiff engaged in self-harming conduct, including, 1) cutting himself with a razor; 2) going on a hunger strike; and 3) gouging his arm. He was also intermittently placed on suicide watch.[119]

Plaintiff alleges that LDPSC violated the ADA and RA when the Defendant placed him in CBC and CBD.[120] He contends that these units were more dangerous and painful for him than for other prisoners who do not suffer from a mental disability.[121]

First, Defendants argue that summary judgment is warranted because Plaintiff failed to request an accommodation.[122] Plaintiff counters that he was not required to request an accommodation considering LDPSC was fully aware of his disabilities.[123] Plaintiff is correct.[124] It is undisputed that Plaintiff suffered from several mental limitations. Defendants concede that Plaintiff was diagnosed with anti-social personality disorder and paranoid personality disorder.[125] Further, Defendants concede that Plaintiff has a history of self-harm, suffers from a substance use disorder, and was taking psychotropic

---

[117] *Id.* (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 672 (5th Cir. 2004) and *Garrett*, 560 Fed.App'x. at 382)).
[118] Rec. Doc. 103-2, pp. 11–12, ¶73; Rec. Doc. 127-1, p. 11, ¶73.
[119] Rec. Doc. 103-2, pp. 12, 18-19 ¶¶77, 78, 80, and 112; Rec. Doc. 127-1, pp. 12, 17, ¶¶77, 78, 80, and 112.
[120] Rec. Doc. 127, p. 17.
[121] *Id.*
[122] Rec. Doc. 103-1, p. 30.
[123] Rec. Doc. 127, p. 19 (citing Rec. Doc. 27 at p. 29).
[124] *See* Rec. Doc. 27, p. 29; *see also Levy v. Louisiana Dep't of Pub. Safety & Corr.,* 371 F. Supp. 3d 274, 285 (M.D. La. 2019) ("[I]t is axiomatic that the ADA and RA do not require a plaintiff to specifically request a certain accommodation in order to prevail on a claim of disability discrimination.").
[125] Rec. Doc. 103-1, pp. 35–36.

medication.[126] And it is undisputed that Plaintiff has been on suicide watch multiple times.[127] In view of the allegations of Defendants' actual knowledge of Plaintiff's severe mental health conditions, a formal request for accommodation was not required.

Second, Defendants move for summary judgment because Plaintiff failed to identify an available accommodation that LDPSC could have provided to him.[128] Defendants argue that Plaintiff was offered certain accommodations, like medical treatment, but did not always accept them. For example, they rely on the fact that he attended only four out of the six psychiatric clinics offered to him and point to one instance in which Plaintiff failed to attend mental health group therapy.[129] The Court is unpersuaded by this argument; Defendants rely on spans of time that are irrelevant to these claims. For example, even if Plaintiff did refuse two psychiatric clinics, Defendants do not assert that he refused these clinics while he was in CBC or CBD; rather, they argue that he refused two psychiatric clinics "for the year of March 25, 2020 until March 24, 2020."[130] There is no summary judgment evidence showing that these clinic refusals or clinic offerings occurred during his time between CBC or CBD. As another example, Defendants argue that he was treated by a psychiatrist on October 1, 2020 but refused care on March 24, 2021.[131] Again, this evidence is irrelevant with respect to the accommodations he was offered, or not offered, while he was in CBC or CBD.

---

[126] *Id.* at p. 36.
[127] *Id.* at p. 37.
[128] *Id.* at pp. 30–31.
[129] Rec. Doc. 103-1, p. 36 (citing Exhibit D at ¶33, Exhibit E at ¶20, Affidavit of Dr. Gamble and attached Exhibit 16, Mental Health records at p. 14.) and p. 39 (citing Exhibit E at ¶30, Affidavit of Dr. Gamble).
[130] *Id.* at p. 39 (citing Exhibit E at ¶30, Affidavit of Dr. Gamble).
[131] *Id.*

According to Plaintiff, he went to CBD for suicide watch and went to CBC for disciplinary segregation.[132] Plaintiff testified that in previous instances he underwent disciplinary segregation in the T.U.[133] He testified that when completing disciplinary segregation in the T.U., he was allowed to go in the yard, participate in recreation, and was treated as though he was "just on the T.U."[134] In contrast, when in CBD or CBC, he claims he was confined to his cell for 23 to 24 hours per day and denied programs like yard recreation, mental health therapy, and counseling.[135] Further, he testified that while in CBC, he was forced to share his cell with another inmate.[136] He claims that he heard voices telling him to harm this inmate, so instead, he harmed himself.[137] Finally, Plaintiff claims that when he cut himself with a razor, Defendants did not remove the razor from his cell; therefore he "wound up" cutting himself with the same razor.[138] Plaintiff argues that LDPSC could have accommodated Plaintiff by removing him from a shared cell, allowing him out of his cell for therapy or counseling, or at the least, removing the razor from his cell.[139]

Plaintiff's allegations suggest that the T.U. was an appropriate and available accommodation and that he previously completed disciplinary segregation in the T.U. Defendants' explanations of why the T.U was not used in the instant situation serve only to highlight material disputes of fact. Defendants offer that Plaintiff remained in CBC or CBD for so long "either because of lack of bed space [in another unit] or because he was

---

[132] Rec. Doc. 103-6, p. 20, Dep. Transcript 74:11–12.
[133] *Id.* at pp. 20–21, Dep. Transcript 76:17–77:7.
[134] *Id.* at p. 21, Dep. Transcript 77:8–78:3.
[135] *Id.* at p. 20, Dep. Transcript 73:17–75:20.
[136] *Id.* at p. 13, Dep. Transcript 47:2–16.
[137] *Id.*
[138] *Id.* at p. 15, Dep. Transcript 54:1–6.
[139] Rec. Doc. 127, pp. 20–21.

being investigated for other incidents."[140] Defendants rely on Plaintiff's location sheet to support this statement.[141] The location sheet is not summary judgement evidence of why Plaintiff was located where he was, nor is it evidence of a lack of alternative accommodations. Defendants invite the Court to assume that there was in fact a lack of bed space or that Plaintiff was being investigated for other incidents. The Court finds that there are several genuine issues of material fact regarding whether accommodations could have been made in light of Plaintiff's known mental health condition. Summary judgment is denied with respect to Plaintiff's RA/ADA claims.

Because the Court has found that summary judgment is unwarranted, there is no need for the Court to address Defendants' remaining argument.

## III.    CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment[142] is hereby **GRANTED in part** and **DENIED in part**. The motion is hereby granted with respect to Plaintiff's deliberate indifference and excessive force claims against Charles Gooden, Roger Young, Michael Lollis, and John Orr. These claims are dismissed without prejudice. The motion is hereby denied with respect to Plaintiff's failure to protect claim against Michael Howard and the ADA/RA claims against LDPSC. Accordingly, Plaintiff and the remaining Defendants are referred to the Magistrate Judge for a scheduling order.

Further, the pending Motion for Extension of Time to Effect Service[143] is hereby **DENIED as moot**. Plaintiff alleged the deliberate indifference claims against Charles

---

[140] Rec. Doc. 103-1, p. 32 (citing Exhibit D, Falgout Affidavit at ¶12, and attached Exhibit 2, Location Sheet, page 3).
[141] Rec. Doc. 103-9, Exhibit D, Falgout Affidavit at ¶12 (citing Location Sheet at p. 3, Exhibit 2).
[142] Rec. Doc. 103.
[143] Rec. Doc. 146.

Tolbert in addition to the now dismissed movants. Having found that Plaintiff failed to exhaust his deliberate indifference and excessive force claims, service on Charles Tolbert is premature. Accordingly, the motion is dismissed without prejudice, and the portion of the Court's May 28, 2024 Order allowing the parties to supplement their summary judgment briefing with respect to the claims against Charles Tolbert is vacated.[144]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on 24th day of September, 2024.

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[144] Rec. Doc. 137.