UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

COREY MARQUEE ADAMS

VERSUS

LOUISIANA DEPARTMENT OF
CORRECTIONS, ET AL.

CIVIL ACTION

22-20-SDD-RLB

### RULING

Before the Court is the Defendant's[1] Motion to Exclude and/or Limit the Testimony of Jennifer Bundrick, M.D.[2] The Plaintiff, Corey Marquee Adams, ("Adams" or "Plaintiff") filed an Opposition,[3] to which Defendant filed a Reply.[4] For the following reasons, the motion is DENIED.

Plaintiff claims that he suffers from a disabling mental condition and that the Louisiana Department of Public Safety and Corrections ("LDPSC") violated the ADA and RA by placing him in solitary confinement. Plaintiff intends to offer opinion testimony from a forensic psychiatrist, Jennifer Bundrick M.D. Defendant does not challenge Dr. Bundrick's qualifications as a forensic psychiatrist. According to her CV,[5] Dr. Bundrick is a double-board-certified general and forensic psychiatrist with more than 10 years' experience overall and 6 years of clinical experience in a correctional environment. She has qualified as an expert in forensic psychiatry in multiple federal and state courts. She

---

[1] Louisiana Department of Public Safety and Corrections ("LDPSC") is the only remaining defendant.
[2] Rec. Doc. 170.
[3] Rec. Doc. 174.
[4] Rec. Doc. 179.
[5] Rec. Doc. 170-3.

has also conducted evaluations and testified as a forensic psychiatrist about mental health treatment, competency, and mental conditions.

Dr. Bundrick proposes to offer four opinions: (1) Adams's mental health status over time based on her review of his medical and mental health records and her interviews with him; (2) the psychological effects of solitary confinement; (3) whether Adams's psychological conditions were affected by solitary confinement between October and December 2020; and (4) what potential accommodations Adams could have received that may have benefited his mental health.[6]

Dr. Bundrick's reliance materials included: (1) Adams's medical records; (2) Adams's mental health records; (3) Adams's disciplinary records; (4) two three-hour remote interviews with Adams; (5) Adams's complaint; (6) the Court's order on the Defendants' summary judgment motion; (7) scientific articles on solitary confinement's effect on mental health; (8) position statements from national and international organizations regarding solitary confinement; (9) LDPSC regulations; (10) LDPSC materials regarding the ADA; and (11) LDPSC directives regarding disciplinary segregation and mental health treatment.[7] In total, Dr. Bundrick reviewed over 5,000 pages of materials and evaluated Adams over 6 hours of interviews.[8]

The Defendant challenges the reliability and relevance of Dr. Bundrick's opinions.

I.  **RELIABILITY OF DIAGNOSIS**

Defendant argues that Dr. Bundrick relied "almost exclusively" on Adams who is unreliable due to a diagnosis of malingering. It argues that because of Adams's history of

---

[6] *Id.*
[7] *Id.*
[8] Rec. Doc. 170-2, p. 32.

malingering, he is untrustworthy, and thus, any opinion based on his self-reports is unreliable.

Dr. Bundrick acknowledged that Adams exhibited malingering behavior.[9] She noted that "Adams' record clearly reflected reported symptoms which were fabricated or exaggerated with the suspected external motivation of alternative housing."[10]

Defendant cites *Viterbo v. Dow Chemical Co.*[11] and *Christophersen v. Allied-Signal Corp.*[12] in support of its contention that an expert's principal reliance on the plaintiff's complaints as the foundation for his/her opinions is mere *ipse dixit*. First, the record does not support the Defendant's assertion that Dr. Bundrick relied almost exclusively on Adams. She also relied on his mental health and medical records and historical disciplinary records which document his behavior. A forensic psychiatrist must consider the history, manner, demeanor, and cognition of the subject, in this case Adams.

Dr. Bundrick based her opinion on her "review of available records, Mr. Adams' self-reported history, and [her] objective observations of Mr. Adams."[13] She opined that since at least April 2016, Adams has suffered and continues to suffer from mild neurocognitive disorder due to a traumatic brain injury with behavioral disturbance. Dr. Bundrick's records review documented impairments regarding Plaintiff's attention, executive function, memory, language use, and social skills.[14] Based on her review of his medical and mental health records and her evaluation of him, Dr. Bundrick diagnosed

---

[9] Rec. Doc. 170-3.
[10] *Id.*
[11] 826 F.2d 420, 421–22 (5th Cir. 1987).
[12] 939 F.2d 1106 (5th Cir. 1991).
[13] Rec. Doc. 170-3.
[14] *Id.*

Adams with posttraumatic stress disorder manifested in "emotional[] and behavioral symptoms" as well as "reactive-externalizing symptoms."[15]

Dr. Bundrick diagnosed Adams with antisocial personality disorder, based on his historical "pattern of failure to conform to social norms" and his "deceitfulness; impulsivity; irritability and aggression; reckless disregard for safety of himself and others."[16] As to his malingering, Dr. Bundrick explained that malingering is often "a coping strategy particularly in individuals who were shaped by early abuse or trauma" and that it "frequently coexists with genuine psychiatric conditions."[17]

The Court finds that under the circumstances presented, Dr. Bundrick's mental health diagnosis and opinions regarding Adams's mental health condition are based on sufficient facts and data,[18] are the product of reliable principles and methods, and reflect a reliable application of the principals and methods to the facts of this case.[19] A medical expert may rely on the patient's reports of their medical history and experience. This is a generally accepted methodology among medical practitioners, and reliance on self-reported history is not per se unreliable.[20]

---

[15] *Id.*
[16] *Id.*
[17] *Id.* at pp. 34–35.
[18] Which included not only direct observation and psychiatric evaluation of Adams but also a review of his medical and mental health records.
[19] Fed. R. Evid. 702.
[20] *Curlee v. United Parcel Serv., Inc.*, No. 13-344, 2014 WL 11516719 (N.D. Tex. Dec. 12, 2014) (Plaintiff's expert considered self-reports and allegedly failed to consider malingering of PTSD symptoms. The court ruled that the expert's method was not unreliable "simply because it uses self-reporting tests," which were "commonly used for diagnosing PTSD."); *Stewart v. Hankins*, No. 15-586, 2016 WL 7971939, at *2 (E.D. Tex. Oct. 7, 2016) (explaining that "[a] doctor's opinion as to diagnosis should not be excluded under Daubert merely because the doctor relied in part on the patient's self-reported symptoms or medical history"); *Lilley v. Home Depot U.S.A., Inc.*, 567 F. Supp. 2d 953, 957 (S.D. Tex. 2008) (explaining that "[a] doctor's expert testimony should not be excluded under Daubert solely on the ground that his causation diagnosis was based only on his patient's self-reported history.").

Defendant further argues that Dr. Bundrick's opinions are unreliable because she failed to survey or familiarize herself with the actual conditions in the Treatment Unit ("TU") or cell blocks. Rather, she relied on Adams's descriptions of the TU and cellblocks. Defendant argues that without direct observation of the comparative conditions between the TU and cellblocks, Dr. Bundrick's opinions are unreliable. Defendant argues that Dr. Bundrick simply does not know whether the conditions in the cellblocks are materially different than in the TU. The gravamen of Defendant's objection is that Dr. Bundrick's opinion is unreliable because, Defendant argues, Adams is unreliable. If the treatment that Adams received in the TU and cell blocks is not as Adams described, that is fertile grounds for cross-examination and is the subject of counter opinions by Defendant's expert. Dr. Bundrick's opinion may be proven wrong if Adams was untruthful, but that does not make her method of reaching that opinion unreliable. "It is not the role of the court to decide whether an expert's opinions are correct . . . ."[21] "It will often occur that experts come to different conclusions based on contested sets of facts. Where that is so, the Rule 104(a) standard does not necessarily require exclusion of either side's experts. Rather, by deciding the disputed facts, the jury can decide which side's experts to credit."[22]

## II. OPINIONS REGARDING THE MENTAL HEALTH EFFECTS OF SOLITARY CONFINEMENT

Defendant argues that Dr. Bundrick's opinions regarding the mental health effects of solitary confinement should be excluded "because she ignored what is arguably the most important research in the field[,]" and thus, her opinions are not the product of reliable principals and methods.[23]

---

[21] *Roake v. Brumley*, 756 F. Supp. 3d 219, 231 (M.D. La. 2024).
[22] *Id.*
[23] Rec. Doc. 170-2.

Defendant argues that "Dr. Bundrick's opinions are premised upon scientific research in the field, only some of which she addressed in her report." Defendant asserts that absent the support of "scientifically valid longitudinal studies[,]"[24] Dr. Bundrick's opinion regarding the effect of restrictive housing on mental health is not the product of reliable principals and methods. The briefs of the parties and the reports of the experts[25] make it clear that there are a plethora of studies and divergent opinions among professionals regarding the mental health effect of solitary confinement. Whether Dr. Bundrick's opinion is right is not the inquiry. Rather, the inquiry is whether it is reliably supported. The fact that there are differences of opinion within the scientific community does not render Dr. Bundrick's opinions infirm under a FRE 702 analysis. The Court finds that Dr. Bundrick's reliance materials on the issue of the mental health effects of solitary confinement are sufficient data from which Dr. Bundrick formulated a reliable, albeit disputed, opinion.

Where there are dueling studies or views in the scholarship, "it is not the province of the court to choose between the competing theories when both are supported by reliable scientific evidence." [26] Where there are competing studies, that scholarship alone "do[es] not make [an expert's] opinion inadmissible."[27]

---

[24] Defendant argues that a white paper from the Department of Justice expresses the need for longitudinal studies and that longitudinal studies, including, inter alia, a Colorado Study, belie Dr. Bundrick's opinion. Defendant argues that "Dr. Bundrick failed to cite any of the larger, more scientifically valid longitudinal studies." Rec. Doc. 170-1, pp. 18–24.
[25] Rec. Docs. 170-3, 171-1.
[26] *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 633 (8th Cir. 2012).
[27] *Burton v. Wyeth-Ayerst Lab'ies. Div. of Am. Home Prods. Corp.*, 513 F. Supp. 2d 719, 726–28 (N.D. Tex. 2007).

### III.    RELEVANCE

Defendant argues that the "vast majority" of Dr. Bundrick's opinions are addressed to injunctive relief, which Defendant contends is no longer before this Court, and thus, the opinions are irrelevant. Putting aside the issue of whether injunctive relief remains an issue, the Court finds that Dr. Bundrick's opinions about the types of accommodations that would ameliorate Adams's alleged disability are relevant. There remains disagreement among the parties as to each element of an ADA/RA claim.[28] But the parties agree that the jury must first conclude that Adams has a disability as defined by the ADA/RA.[29] The parties also agree that the final element of ADA/RA liability is whether the LDPSC failed to provide a reasonable accommodation.[30] The jury will not be tasked with determining any claim for injunctive relief. However, the availability of and types of accommodations is relevant to whether the Defendant has breached its duty to accommodate a disability. The jury may not reach the question of accommodation if it concludes there is no disability; however, inasmuch as accommodation is an element of Plaintiff's burden, the Court finds that the types of accommodations available for Plaintiff's specific disability are both relevant and helpful to the jury.

Defendant further challenges relevance arguing that Dr. Bundrick's diagnoses made in early 2025 are irrelevant to the time frame that is the subject of this suit, October 6, 2020, through December 29, 2020. Plaintiff concedes that Dr. Bundrick did not examine Adams between October 6, 2020, and December 29, 2020. "But she plainly provided an opinion on that time period, and she need not have performed her examination of Mr.

---

[28] Joint Proposed Jury Instructions, Rec. Doc.195.
[29] *Id.* at p. 28.
[30] *Id.* at p. 31.

Adams at that specific point in time in order to do so."[31] The Court agrees. By nature, the diagnostic practice is backward looking. Indeed, the "History of Present Illness" is the foundational inquiry. Defendant cites no authority for the proposition that a forensic medical expert must examine the subject at the time of the subject incident in order to make a reliable diagnosis.

## IV.    RELIABILITY OF ACCOMMODATION OPINIONS

Defendant moves to exclude Dr. Bundrick's opinions about accommodations as unreliable. Dr. Bundrick, a forensic psychiatrist, has been asked to opine about "the psychiatric effects of extended solitary confinement and disciplinary segregation on Mr. Corey Adams."[32] She opines that Adams has disabling mental illness requiring accommodation. She recommends accommodations "to be considered that would be beneficial to Mr. Adams' mental health stability due to his severe psychological distress and heightened self-harm risk."[33]

Defendant argues that Dr. Bundrick's accommodation opinions are unreliable because she has no expertise in the ADA/RA, are based on invalid science, and are too vague and/or aspirational to provide meaningful assistance to the jury. Dr. Bundrick need not be an ADA or RA expert to provide opinions about accommodations for a mental health disability. First, the jury must conclude that Adams is disabled.[34] The Court finds that the nature and extent of accommodations is relevant, and Dr. Bundrick's opinion on this would be helpful to the jury. The Court has rejected the argument that Dr. Bundrick's opinions about the deleterious effect of solitary confinement are unsupported or

---

[31] Rec. Doc. 174.
[32] Rec. Doc. 170-3.
[33] *Id.*
[34] Rec. Doc. 196.

unreliable.[35] The Defendant's objections that Dr. Bundrick's accommodations are merely "aspirational" or that her opinions employ vague terminology such as the word "trigger" are referred to trial.

For these reasons, the Defendant's Motion to Exclude Dr. Bundrick's opinions about accommodations that may be considered is DENIED. Defendant also moves to limit Dr. Bundrick's opinions to her May 2025 examination. The Motion to Limit is DENIED for the same reasons that the Court discussed *supra*.

### V.    CONCLUSION

For the aforementioned reasons, Defendant's Motion to Exclude and/or Limit the Testimony of Jennifer Bundrick, M.D.[36] is DENIED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on 30th day of September, 2025.

*[Signature: Shelly D. Dick]*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[35] *Supra*, pp. 5–6.
[36] Rec. Doc. 170.